SCOTT A. EDELMAN, SBN 116927
  sedelman@gibsondunn.com
MICHAEL SEITZ, SBN 271136
  mseitz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East
Suite 4000
Los Angeles, CA  90067-3026
Telephone:  310.552.8500
Facsimile:   310.551.8741

THEANE EVANGELIS KAPUR, SBN 243570
  tkapur@gibsondunn.com
ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

Attorneys for Defendant

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kenny Rosen, Corie Henson, and Michael O'Sullivan, | CASE NO. 2:12-CV-09751-GAF-JEM |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR A STAY PENDING ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| CBS Broadcasting Inc., | [Request for Judicial Notice; [Proposed] Order filed concurrently] |
| Defendant. | **Hearing:** |
| | Date:       January 28, 2013 |
| | Time:       9:30 a.m. |
| | Place:      Roybal Courthouse, Room 740 |
| | Judge:     Hon. Gary Feess |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on January 28, 2013 in Room 740 on the

seventh floor in the United States Courthouse located at 255 East Temple Street, Los

Angeles, California, CBS Broadcasting Inc. ("CBS") will and hereby does move this

Court, pursuant to Rules 12(b)(1), 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the action with prejudice, or alternatively, for a stay pending arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and the arbitration clauses contained in Exhibit 1 to CBS's concurrently filed Request for Judicial Notice.

This Motion is made on the grounds that (i) the Complaint asks the Court to determine a question of arbitrability that under the parties' agreements, and the United States Supreme Court's decision in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002), must be raised in arbitration, and (ii) the allegations in the Complaint are insufficient as a matter of law to show that CBS waived its right to arbitrate.

First, Plaintiffs' claims arise from agreements that clearly and unmistakably delegate questions of arbitrability, including questions of waiver, to the arbitrator. "The parties' intentions [must] control," and the Court is therefore "divested of [its] authority" to resolve the arbitrability dispute so that "the arbitrator may decide in the first instance whether [the] dispute is arbitrable." *E.g.*, *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011); *United Bhd. of Carpenters & Joiners of Am. Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir. 1996). Moreover, assuming *arguendo* that the agreements at issue are ambiguous, "the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability." *Howsam,* 537 U.S. at 84-85. Therefore, the Court should dismiss with prejudice the claims for relief that ask this Court to determine waiver in place of the arbitrator (the First, Second, and Fourth Claims, *see* Compl. ¶¶ 61-84, 90-91), and it should dismiss without prejudice, or, in the alternative, stay Plaintiffs' breach of contract claim (the Third Claim, *see* Compl. ¶¶ 85-89), pending the arbitrator's decision on the arbitrability of the claims at issue. *See* Fed. R. Civ. P. 12(b)(1),

1   12(b)(3), 12(b)(6);[*] 9 U.S.C. § 3.

2          Second, under California law, courts must "closely scrutinize any allegation of

3   waiver of such [a] favored right [*i.e.* the right to arbitration]," *Doers v. Golden Gate*

4   *Bridge Highway and Transportation District*, 23 Cal. 3d 180, 189 (1979), and a party

5   claiming waiver bears a "heavy burden," which cannot be established by allegations of

6   "mere participation in litigation."  *Saint Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal.

7   4th 1195, 1203 (2003).  Plaintiffs' allegations do not meet this burden because they fail

8   to show (i) that CBS's prior litigation conduct was inconsistent with its right to

9   arbitrate, or (ii) that Plaintiffs suffered any legally cognizable prejudice, let alone any

10  prejudice arising from acts that were inconsistent with the right to arbitrate.  To the

11  extent the Court reaches these questions of arbitrability, it should decide them in

12  CBS's favor as a matter of law and dismiss the Complaint, with prejudice, so that the

13  parties may proceed in arbitration.

14         This Motion is based upon this Notice of Motion and Motion to Dismiss, or in

15  the Alternative, for a Stay Pending Arbitration, the below Memorandum of Points and

16  Authorities in support thereof, the concurrently filed Request for Judicial Notice and

17  the declaration and exhibits attached thereto, any reply brief in support thereof, and

18  upon such other matters and further argument as may be presented at the time of the

19  hearing of this Motion.

20         This Motion is made following the conference of counsel pursuant to Local Rule

21  //

22  //

23  //

24  //

25

26  _____

27  [*]  Dismissal based on an arbitration agreement is appropriate under Rules 12(b)(1),
    12(b)(3) and 12(b)(6).  *See, e.g., Valley Power Sys., Inc. v. Gen. Elec. Co.*, 2012
28  WL 665977 at *7 (C.D. Cal. Feb. 27, 2012); *see also Inlandboatmens Union of the
    Pacific v. Dutra Group*, 279 F.3d 1075 (9th Cir. 2002).

Gibson, Dunn &
Crutcher LLP

3

7-3 that took place starting on November 27, 2012.

Dated: December 14, 2012        GIBSON, DUNN & CRUTCHER LLP


By:     /s/ Theane Evangelis Kapur
Theane Evangelis Kapur
Attorneys for CBS Broadcasting Inc.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ...................................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................... 4

    A.   Pursuant To Their Non-Disclosure Agreements, Plaintiffs Agreed To Binding Arbitration Governed By The AAA Rules And Expressly Permitted CBS To Seek Equitable Relief From A Judicial Authority .................................................................................. 4

    B.   CBS Seeks Emergency Injunctive Relief Pursuant To The Parties' NDAs Against Numerous Parties, Including Plaintiffs ........................... 5

    C.   Plaintiffs File This Litigation To Stop Arbitration Months After CBS Invokes Its Right To Arbitrate ............................................................. 7

III. ARGUMENT .............................................................................................. 8

    A.   The Court Lacks Authority To Resolve Plaintiffs' Waiver Claims .......... 8

        1.   The NDAs Clearly And Unmistakably Delegate Arbitrability Disputes, Like Waiver, To The Arbitrator ...................................... 8

            a.   The NDAs' Broad Arbitration Clauses Clearly And Unmistakably Delegate Arbitrability To The Arbitrator .... 10

            b.   The NDAs' Incorporation Of The AAA Commercial Arbitration Rules Clearly And Unmistakably Delegates Arbitrability To The Arbitrator ............................ 11

        2.   Determining Whether CBS Waived Its Right To Arbitrate Turns On The Interpretation Of The NDAs' Injunctive Relief Provisions, Which The Parties Agreed Is For The Arbitrator To Decide .......................................................................................... 12

        3.   Even If The NDAs Were Ambiguous, Waiver Would Presumptively Be For The Arbitrator To Decide .......................... 13

    B.   Alternatively, The Court Should Dismiss The Complaint With Prejudice Because CBS Did Not Waive Its Right To Arbitrate ............. 15

        1.   CBS's Pursuit Of Injunctive Relief, Which Was Expressly Permitted By The NDAs, Was Entirely Consistent With Its

i

Right To Arbitrate ....................................................................... 17

2.   CBS's Limited Discovery Efforts Were Neither Inconsistent
With The Right To Arbitrate Nor Prejudicial To Plaintiffs .......... 18

a.   CBS's Discovery Requests Were Incidental To Its
Request For Injunctive Relief ................................... 19

b.   Plaintiffs Were Not Prejudiced By Discovery Offered
By Their Co-Defendants ......................................... 20

c.   Plaintiffs Admit That The Discovery Produced In The
Federal Action Was Solely For The Copyright Claims,
Which Are Not Part Of The Pending Arbitration ............... 21

d.   There Is No Prejudice Because The Same Type Of
Discovery Taken In The Federal Action Is Available
In Arbitration ....................................................... 22

3.   Plaintiffs Were Not Prejudiced By Any Delay ............................ 23

4.   Plaintiffs' Remaining Prejudice Allegations Fail As A Matter
Of Law ............................................................................ 23

C.   Plaintiffs' Claims Should Be Dismissed Or, Alternatively, Stayed ........ 24

IV.   CONCLUSION ............................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

Page(s)

### Cases

*A. Farber and Partners, Inc. v. Garber,*
234 F.R.D. 186 (C.D. Cal. 2006)..................................................................21

*AT&T Corp. v. Vision One Securities Sys.,*
914 F. Supp. 392 (S.D. Cal. 1995) ...............................................4, 17, 24

*AT&T Mobility LLC v. Concepcion,*
131 S. Ct. 740 (2011)...................................................................................23

*ATSA of Cal., Inc. v. Continental Ins. Co.,*
702 F.2d 172 (9th Cir. 1983) ......................................................................18

*Awuah v. Coverall N. Am., Inc.,*
554 F.3d 7 (1st Cir. 2009)............................................................................11

*Bailey v. Household Finance Corp. of California,*
2011 WL 5118723 (S.D. Cal. Oct. 28, 2011)...........................................23

*Bruni v. Didion,*
160 Cal. App. 4th 1272 (2008) .....................................................................9

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
207 F. 3d 1126 (9th Cir. 2000) ...................................................................14

*Christensen v. Dewor Devs.,*
33 Cal. 3d 778 (1983) ..................................................................................15

*Contec Corp. v. Remote Solution, Co., Ltd.,*
398 F.3d 205 (2d Cir. 2005) ........................................................................12

*Cox v. Ocean View Hotel Corporation,*
533 F.3d 1114 (9th Cir. 2008) .....................................................................15

*Doers v. Golden Gate Bridge Highway and Trans. Dist.,*
23 Cal. 3d 180 (1979) ..................................................................................16

*Ehleiter v. Grapetree Shores, Inc.,*
482 F.3d 207 (3d Cir. 2007) ........................................................................14

Gibson, Dunn &
Crutcher LLP

*First Options of Chicago, Inc. v. Kaplan,*
   514 U.S. 938 (1995) ................................................................. 9

*Fisher v. AG Becker Paribas Inc.,*
   791 F.2d 691 (9th Cir. 1986) ............................................. 16, 19, 22

*Green Tree Fin. Corp. v. Bazzle,*
   539 U.S. 444 (2003) ...................................................... 9, 11, 13

*Grigsby & Assocs., Inc. v. M Securities Investment,*
   664 F.3d 1350 (11th Cir. 2011) ............................................... 14

*Guidewire Software, Inc. v. Chookaszian,*
   2012 WL 5379589 (N.D. Cal. Oct. 31, 2012) .................................. 12

*Howsam v. Dean Witter Reynolds, Inc.,*
   537 U.S. 79 (2002) ...................................................... 3, 9, 13

*In re Silicon Graphics, Inc. Securities Litig.,*
   183 F.3d 970 (9th Cir. 1999) ................................................... 1

*In re Toyota Motor Corp.,*
   838 F. Supp. 2d 967 (2012) ................................................... 15

*In re Toyota,* No. 12-55659 (9th Cir.) ........................................... 15

*Irwin v. UBS Painewebber, Inc.,*
   324 F. Supp. 2d 1103, 1111 (C.D. Cal. 2004) .............................. 20, 22

*JPD, Inc. v. Chronimed Holdings, Inc.,*
   539 F.3d 388 (6th Cir. 2008) ................................................. 14

*Lake Communications, Inc. v. ICC Corp.,*
   738 F.2d 1473 (9th Cir. 1984) ............................................. 16, 21

*Lima v. Gateway, Inc.,*
   No. 09-01366, 2012 WL 3594341 (C.D. Cal. Aug. 7, 2012) .................... 13

*Marie v. Allied Home Mortgage Corp.,*
   402 F.3d 1 (1st Cir. 2004) ................................................... 14

*Momot v. Mastro,*
   652 F.3d 982 (2011) .................................. 2, 8, 9, 11, 13, 15

Gibson, Dunn &
Crutcher LLP

iv

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983) ................................................................... 13, 14, 16

*Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.,*
   328 F.3d 462 (8th Cir. 2003) ........................................................... 10, 13

*Nelson v. Louisiana Elec. Rig Serv.,*
   2006 WL 5671234 (C.D. Cal. Feb. 22, 2006) ........................................... 23

*Petrofac, Inc. v. DynMcDermott Petro. Operations Co.,*
   687 F.3d 671 (5th Cir. 2012) ............................................................... 12

*Qualcomm Inc. v. Nokia Corp.,*
   466 F.3d 1366 (Fed. Cir. 2006) .............................................. 2, 9, 10, 13

*Quevedo v. Macy's, Inc.,*
   798 F. Supp. 2d 1122 (C.D. Cal. 2011) ........................................... 16, 23

*Rent-A-Center, West, Inc. v. Jackson,*
   130 S. Ct. 2772 (2010) ........................................................................ 9

*Republic of Ecuador v. Chevron Corp.,*
   638 F.3d 384 (2d Cir. 2011) ........................................... 2, 10, 13, 14

*Saint Agnes Med. Ctr. v. PacifiCare of Cal.,*
   31 Cal. 4th 1193 (2003) ........................... 3, 4, 12, 16, 18, 20, 22, 23, 24

*Terminex Int'l Co. v. Palmer Ranch Ltd.,*
   432 F.3d 1327 (11th Cir. 2005) ........................................................... 12

*U.S. v. Park Place Assocs., Ltd.,*
   563 F.3d 907 (9th Cir. 2009) ................................................................ 3

*United Bhd. of Carpenters & Joiners of Am. Local No. 1780 v. Desert Palace, Inc.,*
   94 F.3d 1308 (9th Cir. 1996) ...................................................... 1, 2, 9

*Van Ness Townhouses v. Mar Industries Corp.,*
   862 F.2d 754 (9th Cir. 1988) ......................................................... 19, 22

*Woodland Ltd. v. Partnership v. Wulff,*
   868 A.2d 860 (D.C. App. 2005) ........................................................... 10

*Wynn Resorts, Ltd. v. Atlantic-Pacific Capital, Inc.,*
   2012 WL 5489970 (9th Cir. Nov. 13, 2012) ........................................ 9, 11

Gibson, Dunn &
Crutcher LLP

v

## Statutes

17 U.S.C. § 502 ...................................................................................................6

9 U.S.C. § 1 *et seq* .............................................................................................16

9 U.S.C. § 3 ...................................................................................................3, 25

Cal. Bus. & Prof. Code § 17203 ........................................................................6

Cal. Civ. Code § 3426.2 .....................................................................................6

Cal. Civ. Proc. Code § 1281.8 ..........................................................................17

## Rules

Fed. R. Civ. P. 12 ....................................................................................3, 24, 25

Gibson, Dunn &
Crutcher LLP

## I.   INTRODUCTION

Plaintiffs' suit is barred as a matter of law.  Plaintiffs ask this Court to resolve a dispute arising under the parties' arbitration agreement, but the parties clearly and unmistakably agreed that such disputes must be brought before an arbitrator—not a court.  The parties' agreements thus divest this Court of authority to decide these issues, *United Bhd. of Carpenters & Joiners of Am. Local No. 1780 v. Desert Palace, Inc.*, 94 F.3d 1308, 1310 (9th Cir. 1996), and the Court should therefore dismiss the case with prejudice, or at a minimum stay it pending the outcome of the parties' pending arbitration.  In the alternative, if the Court reaches the waiver issues raised in Plaintiffs' Complaint, it should dismiss the case with prejudice, because the allegations fail to establish waiver as a matter of law.

This case involves the interpretation of certain Nondisclosure Agreements ("NDAs") that Plaintiffs admittedly entered into, which expressly require arbitration of (1) any and all disputes arising under the NDAs, or (2) "*any effort by any party to enforce, interpret, construe, rescind, terminate or annul this Agreement, or any provision thereof.*"  Compl. ¶¶ 3, 25, 29, 55; Req. for Judicial Notice filed concurrently herewith ("RJN"), Ex. 1, at 3 (emphasis added).[1]  Plaintiffs' lawsuit asks this Court to enforce, interpret, and construe those agreements in place of the arbitrator.  On July 30, 2012, CBS initiated arbitration against Plaintiffs—as permitted by the NDAs—after Plaintiffs breached the NDAs by disclosing CBS's trade secrets to one of CBS's business competitors.  RJN, Ex. 2, Attachment A, at 3; *accord id.*, Ex. 1, at 1.  Not once during the pendency of that action did Plaintiffs assert the argument that CBS either should be forced to proceed in arbitration against them or, alternatively, that CBS had waived its right to compel arbitration.

Instead, almost four months later, Plaintiffs filed suit in this Court arguing that

---

[1]  Plaintiffs have referenced these NDAs and therefore incorporated them into the Complaint against Defendant CBS Broadcasting, Inc. ("CBS").  Compl. ¶ 3; *see In re Silicon Graphics, Inc. Securities Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).

CBS "waived its right to arbitrate these disputes through its conduct in litigation" it brought against Plaintiffs in May 2012 seeking to enjoin Plaintiffs' unlawful conduct—litigation that was expressly permitted by the NDAs.  Compl. ¶ 8; RJN, Ex. 1, at 4 ("[N]otwithstanding the provisions of [the NDAs' arbitration clause], [CBS] shall have a right to injunctive relief or other equitable relief.").  As a result, Plaintiffs (1) seek to enjoin the arbitration, (2) simultaneously ask this Court and an arbitrator to rule that they did not violate the NDAs, and (3) request damages from CBS for allegedly violating the NDAs itself.  Compl. ¶¶ 61-91; RJN, Ex. 3, at 9.

The Court should dismiss the Complaint for at least two independent reasons:

*First*, the arbitration provisions in the NDAs clearly and unmistakably delegate questions of arbitrability, including waiver, to the arbitrator.  They do so (i) by virtue of their broad arbitration provisions delegating to the arbitrator the authority to resolve any effort "to enforce, interpret, construe, rescind, terminate or annul" the agreements, "or any provision thereof," including the arbitration provisions themselves, and (ii) by expressly incorporating the American Arbitration Association's ("AAA") Commercial Arbitration Rules, which delegate such questions to an arbitrator.  RJN, Ex. 1, at 3.  In the face of such a clear delegation, "the parties' intentions control," and the Court is "divested of [its] authority" so that "the arbitrator may decide in the first instance whether [the] dispute is arbitrable." *E.g.*, *Momot v. Mastro*, 652 F.3d 982, 987 (2011); *Desert Palace*, 94 F.3d at 1310; *see also Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 394(2d Cir. 2011) (referring litigation-related waiver to the arbitrator where there was "'clear and unmistakable evidence' that the parties intended these issues to be decided by the arbitral panel in the first instance"); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (construing Ninth Circuit precedent and vacating denial of stay request because conduct-based estoppel defense was "clearly and

Gibson, Dunn & Crutcher LLP

2

unmistakably" delegated to the arbitrator).[2]  Moreover, even assuming, *arguendo*, that

the NDAs are ambiguous (they are not), the U.S. Supreme Court's directive in

*Howsam v. Dean Witter Reynolds, Inc.* could not be clearer:  "[T]he presumption is

that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to

arbitrability."  537 U.S. 79, 84-85 (2002).  The Court should therefore dismiss with

prejudice the claims for relief that necessarily ask this Court, rather than the arbitrator,

to determine waiver (the First, Second, and Fourth Claims, *see* Compl. ¶¶ 61-84, 90-

91), and it should dismiss, or at a minimum stay, Plaintiffs' Third Claim for breach of

contract (*see id.* ¶¶ 85-89) pending the arbitrator's decision on the arbitrability of that

claim.  *See* Fed. R. Civ. P. 12(b)(1), 12(b)(3), 12(b)(6); 9 U.S.C. § 3.

　　　*Second*, should the Court rule on the arbitrability of Plaintiffs' claims, it should

hold that Plaintiffs' allegations fail to allege, let alone satisfy their "heavy burden" to

show, that CBS's actions were inconsistent with its right to arbitrate *and* that those

actions caused Plaintiffs prejudice.  *Saint Agnes Med. Ctr. v. PacifiCare of Cal.*, 31

Cal. 4th 1193, 1195 (2003) ("*Saint Agnes*"); *U.S. v. Park Place Assocs., Ltd.*, 563 F.3d

907, 921 (9th Cir. 2009).  Plaintiffs have not alleged that CBS "substantially invoked"

the litigation machinery as to its arbitrable claims, or that the parties were "well into"

the litigation of those claims before CBS filed its arbitration demand less than three

months after filing suit.  *Saint Agnes*, 31 Cal. 4th at 1196.  Nor have they alleged that

CBS delayed for a long period before seeking to arbitrate; that CBS was able to take

advantage of judicial discovery procedures not available in arbitration; or that the

delay affected, misled, or prejudiced Plaintiffs.  *Id.*  Plaintiffs bemoan a so-called

"war" that CBS purportedly waged against them in this Court.  Compl. ¶ 32.  But the

emergency relief sought in that action was *expressly* allowed under the NDAs.  RJN,

Ex. 1, at 4.  Therefore, the act of seeking narrowly tailored discovery in furtherance of

---

[2]  Not surprisingly, in light of this mandatory, binding, and enforceable arbitration clause, Plaintiffs already have presented their case for waiver to the AAA as well. RJN, Ex. 3, at 3-6.

that injunctive relief plainly is consistent with the arbitration agreements and CBS's

right to arbitrate.  *E.g.*, *AT&T Corp. v. Vision One Securities Sys.*, 914 F. Supp. 392,

396-97 (S.D. Cal. 1995).  Moreover, Plaintiffs do not allege any prejudice from any

discovery in the prior litigation—nor could they—because all of that discovery was

either "available in arbitration" (*Saint Agnes*, 31 Cal. 4th at 1196), produced

voluntarily by another party that was *not* subject to the arbitration agreement, and/or

made available in response to claims (*i.e.*, copyright) that are not at issue in the

arbitration.  Thus, if the Court reaches the merits of Plaintiffs' waiver claim, it should

dismiss the Complaint with prejudice.

## II.     FACTUAL BACKGROUND

**A.     Pursuant To Their Non-Disclosure Agreements, Plaintiffs Agreed To Binding Arbitration Governed By The AAA Rules And Expressly Permitted CBS To Seek Equitable Relief From A Judicial Authority**

Each of the Plaintiffs worked for multiple seasons in high-level positions on

CBS's hit reality television series *Big Brother*.  *See* Compl. ¶¶ 17, 18, 19.  Each year

they worked on *Big Brother*, Plaintiffs signed nondisclosure agreements, which the

Complaint incorporates by reference (*e.g.*, Compl. ¶¶ 25-30, 55-60, 86), explaining

that their work on *Big Brother* could reveal "confidential and/or proprietary

information and/or trade secrets," and memorializing their agreement not to "publish,

reveal, disseminate, disclose, or cause to be published, revealed, disseminated or

disclosed" such information, whether before or after their employment.  RJN, Ex. 1, at

1.  Plaintiffs also agreed that CBS had "full power and authority to enforce" the terms

of the NDAs.  *Id.* at 4.

The NDAs contain broad, binding arbitration provisions requiring that:

[A]ny and all disputes or controversies arising under this Agreement, or any of its terms, *any effort by any party to enforce, interpret, construe, rescind, terminate or annul this Agreement, or any provision thereof,*

shall be resolved by binding arbitration. . . .[3]

RJN, Ex. 1, at 3 (emphasis added).  Significantly, the NDAs also incorporate the AAA's Commercial Arbitration Rules, including Rule R-7(a), which empower the arbitrator to "rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[4]  *Id.* at 3 ("All arbitration proceedings shall be conducted under the auspices of the American Arbitration Association, under its Commercial Arbitration Rules."); RJN, Ex. 4, at 18. Notwithstanding the above arbitration provisions, each of the NDAs expressly grants CBS a right to seek any "injunctive or other equitable relief as provided in California Code of Civil Procedure [Section] 1281.8 *or* other relevant laws."  RJN Ex. 1, at 4 (emphasis added).  It is therefore undisputed that CBS had the right to *both* arbitrate the substantive claims arising out of the NDAs *and* seek any and all injunctive or equitable relief from a court of competent jurisdiction to supplement any remedies available in arbitration.

## B.   CBS Seeks Emergency Injunctive Relief Pursuant To The Parties' NDAs Against Numerous Parties, Including Plaintiffs

On May 10, 2012, CBS filed an action in this Court against American Broadcasting Companies, Inc. ("ABC"), The Walt Disney Company, Keep Calm and Carry On, Inc. ("Keep Calm"), and other entities, as well as Plaintiffs here, in connection with their development of ABC's reality television series *The Glass House*. RJN Ex. 6, at p. 1.  CBS alleged that in developing *The Glass House*, the defendants were engaged in, among other things, "ongoing . . . infringement of CBS's copyright interests" and that CBS's "trade secrets and confidential information [were] being

---

[3]  Although Plaintiff Rosen's earliest NDA does not address arbitration (RJN Ex. 1 at 9-10), he subsequently signed five more NDAs, all of which contained the provisions described above.  *Id.* Ex. 1 at 11-27.

[4]  One of the several NDAs signed by Plaintiff Michael O'Sullivan provides for arbitration "administered by JAMS in accordance with its Streamlined Arbitration Rules and Procedures."  RJN, Ex. 1, at 56-57.

1  disclosed and put to use on [*The*] *Glass House* daily."  RJN, Ex. 6, ¶ 72.  To stop the

2  ongoing misappropriation of CBS's trade secrets and incipient violation of CBS's

3  copyrights, CBS requested injunctive and equitable relief, including a declaratory

4  judgment that the defendants committed copyright infringement, as well as preliminary

5  and permanent injunctions pursuant to (i) the federal Copyright Act, 17 U.S.C. § 502,

6  (ii) the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426.2,

7  (iii) California's Unfair Competition law, Cal. Bus. & Prof. Code § 17203, and (iv)

8  Plaintiffs' NDAs.  *Id*. ¶¶ 73-133; *id.* at p. 32.  CBS also initially sought damages

9  against all the defendants in that action—including Plaintiffs here—for violating the

10  NDAs.  *Id.* ¶ 123.  But once the TRO proceedings concluded, and before CBS took any

11  other action, CBS voluntarily dismissed the claims against these Plaintiffs by

12  amending its complaint on July 30, 2012.  RJN, Ex. 7; *see* Section III.B.3, *infra*.

13      Two business days after filing its original complaint, CBS moved for expedited

14  discovery for the specific purpose of "develop[ing] the evidentiary record for an

15  imminent request for a preliminary injunction barring [the defendants'] wrongful and

16  infringing conduct."  RJN, Ex. 8, at 2.  On May 25, 2012 (after the case was twice

17  reassigned), the Court ruled that it could not adequately assess CBS's discovery

18  motion due to the limited record and ordered the parties to meet and confer regarding

19  the scope of discovery before raising any remaining discovery disputes.  RJN, Ex. 9, at

20  1-2.

21      Shortly thereafter, two of the *other* defendants in that action—ABC and Keep

22  Calm—voluntarily agreed to produce a limited number of documents that they deemed

23  relevant to CBS's *copyright claims*.  RJN, Ex. 16 ¶ 3.  The defendants otherwise took

24  the position that all discovery related to CBS's claims, which they deemed to be "trade

25  secret discovery," was premature.  Compl. ¶ 34; RJN, Ex. 12, at 1, Ex. 15, at 2.  The

26  defendants also offered to produce *The Glass House*'s show-runner, Plaintiff Rosen,

27  for a contemplated 30(b)(6) deposition regarding the content of *The Glass House*.

28  Compl. ¶ 34; RJN, Ex. 11, at 2, Ex. 12, at 1.

In view of this agreed-upon discovery, on June 1, 2012, Magistrate McDermott ordered Mr. Rosen to sit for deposition "limited to copyright issues"—as the defendants had proposed—but otherwise denied CBS's application for additional discovery to support its request for injunctive relief.  RJN, Ex. 11, at 2.[5]  Magistrate McDermott also noted that the defendants had already "agreed" to produce certain documents related to the content of *The Glass House*.  *Id*.

Based on the Rosen deposition and the limited discovery that Plaintiffs and their co-defendants voluntarily agreed to provide, CBS applied for a temporary restraining order on June 7, 2012 to stop the airing of *The Glass House*, which was scheduled to debut 11 days later.  RJN, Ex. 13, at 25.  That application was denied.  Compl., Ex. A.  And although CBS continued to request additional discovery (*id*., ¶ 40) for the purpose of supporting its request for emergency injunctive relief, its motion was denied after the Court's ruling on the TRO.  *See* RJN, Ex. 14, at 1 (seeking discovery "as soon as possible" because "CBS intends to seek immediate relief, through a TRO or a preliminary injunction"), Ex. 19, at 1 (arguing "good cause for expedited discovery" based on "CBS's present intention . . . to move for [a preliminary] injunction"), Ex. 17 (order denying motion to compel).  After the Court denied the application for a TRO, CBS took no other action in the litigation until it amended its complaint on July 30, 2012 and dropped Plaintiffs Rosen, Henson, and O'Sullivan as defendants.  *Id*., Ex. 7.

## C.  Plaintiffs File This Litigation To Stop Arbitration Months After CBS Invokes Its Right To Arbitrate

The same day it dismissed all claims against Plaintiffs in the federal lawsuit, CBS initiated arbitration against them before the AAA.  Compl. ¶ 49.  Almost four months later, Plaintiffs filed the current action in federal court, alleging that CBS waived its right to arbitrate, seeking to enjoin the pending arbitration, and requesting a

---

[5]  In relation to the copyright claim, Judge McDermott also ordered the defendants to produce an up-to-date episode outline for *The Glass House* in the event that the content of the show were to change.  RJN Ex. 12, at 1.

declaratory judgment that Plaintiffs did not violate the NDAs, as well as damages against CBS for allegedly violating a confidentiality term in the NDAs.  Compl. ¶¶ 61-90.  Plaintiffs also filed an Answering Statement with the AAA repeating the same allegations they make before this Court and asserting the same contract-based counterclaim.  RJN, Ex. 3, at 9.

### III.   ARGUMENT

There is no dispute that Plaintiffs agreed to mandatory arbitration of all claims currently pending before the AAA, as well as the arbitrability, waiver, and breach of contract claims pending before this Court.  Compl. ¶ 3.  Plaintiffs concede that they signed agreements "contain[ing] mandatory arbitration clauses" that "require[] arbitration" (*id*.) of "any and all disputes or controversies" arising under the NDAs, or "any of [their] terms, [or] any effort by any party to enforce, interpret, construe, rescind, terminate or annul th[e] Agreement[s], or any provision thereof."  RJN, Ex. 1, at 3.  Moreover, other than their request to enjoin the arbitration on the basis of waiver, each of Plaintiffs' claims for relief arises directly from the NDAs.  *See* Compl. ¶¶ 74-84 (seeking declaration that Plaintiffs did not violate the NDAs); ¶¶ 85-89 (alleging that CBS breached the NDAs ).  The *sole predicate* for bringing these claims in federal court, instead of before the arbitrator, is Plaintiffs' allegation that CBS purportedly waived its right to arbitration by litigating in this Court.  Compl. ¶ 8. But Plaintiffs have brought this waiver argument in the wrong forum, and, regardless, it fails as a matter of law.

**A.   The Court Lacks Authority To Resolve Plaintiffs' Waiver Claims**

**1.   The NDAs Clearly And Unmistakably Delegate Arbitrability Disputes, Like Waiver, To The Arbitrator**

"[A]rbitration is fundamentally a matter of contract," and "the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms."  *Momot*, 652 F.3d at 986 (internal quotation marks omitted).  "[A]s with any other contract, the parties' intentions control."  *Id*.  Thus, although the

usual presumption is that so-called "questions of arbitrability" are for the Court, not the arbitrator, to decide, it is well settled that "the parties may agree to delegate [questions of arbitrability] to the arbitrator" and that a court must enforce such a delegation.  *Id.* at 987 (citing *Howsam*, 537 U.S. at 83-85 and *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("Just as the arbitrability of the merits of a dispute depends on whether the parties agreed to that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter."); *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777-78 (2010) (courts must enforce "agreement to arbitrate threshold issues"; reversing the Ninth Circuit for failing to refer question of validity to the arbitrator).

The Court must therefore refer questions of arbitrability to the arbitrator where, as here, "there is 'clear and unmistakable' evidence" that "the parties agreed to arbitrate arbitrability."  *Momot*, 652 F.3d at 987-88 (citing *First Options of Chicago, Inc.*, 514 U.S. at 944); *see Desert Palace*, 94 F.3d at 1310 (9th Cir. 1996) (where the parties have delegated the issue of arbitrability, "the court [is] divested of [its] authority and an arbitrator [must] decide in the first instance whether a dispute is arbitrable"); *see also Wynn Resorts, Ltd. v. Atlantic-Pacific Capital, Inc.*, 2012 WL 5489970, at *1 (9th Cir. Nov. 13, 2012); *Qualcomm*, 466 F.3d at 1371.

A claim of waiver by prior litigation conduct is precisely the type of arbitrability issue that the Court must refer to the arbitrator when the parties' agreement requires it.[6]

---

[6] One California court succinctly summed up which claims fall under the rubric of "arbitrability" for purposes of a delegation provision.  "[A] court must look to the *precise nature of the claim* that the party resisting arbitration is making.  If it is claiming that it never agreed to the arbitration clause at all—e.g., if it is claiming forgery or fraud in the factum—then the court must consider that claim.  On the other hand, if it is not denying that it agreed to the arbitration clause, but instead it is claiming some other defense to enforcement of the arbitration clause . . . then the court must enforce the 'arbitrability' portion of the arbitration clause[, and] the parties [must] submit that defense to arbitration."  *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1287 (2008).

For example, the plaintiff in *Republic of Ecuador v. Chevron Corp.*, like Plaintiffs here, filed suit in federal district court to stop an ongoing arbitration on the ground that the claimant had waived its right to arbitrate by its conduct in prior litigation.  638 F.3d 384, 391-92 (2d Cir. 2011).  In affirming the district court's decision denying a stay of arbitration, the Second Circuit held that "even assuming Ecuador's waiver . . . claims go to Chevron's ability to initiate arbitration, and thus are fairly characterized as 'questions of arbitrability,' there is 'clear and unmistakable evidence' that the parties intended these issues to be decided by the arbitral panel in the first instance." *Id.*  The "clear and unmistakable evidence" in that case was the fact that the agreement at issue incorporated the UNCITRAL arbitration rules, which expressly gave the arbitral panel "power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the . . . arbitration agreement." *Id.* at 394 (analogizing the UNCITRAL rules to the AAA rules' treatment of arbitrability).  Other courts agree.  *See, e.g.*, *Qualcomm*, 466 F.3d at 1372-75 (estoppel defense was "clearly and unmistakably" delegated to the arbitrator by incorporating the AAA rules); *Woodland Ltd. P'ship v. Wulff*, 868 A.2d 860, 864-65 (D.C. App. 2005) (referring claim of litigation-related waiver to arbitrator where parties clearly and unmistakably delegated arbitrability by incorporating the AAA rules); *Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462 (8th Cir. 2003) (whether a party had waived its right to arbitrate by pursuing litigation in Oklahoma courts was a matter for the arbitrator to decide).  In light of these authorities, it is indisputable that the parties here "clearly and unmistakably" delegated arbitrability to the arbitrator.

### a. The NDAs' Broad Arbitration Clauses Clearly And Unmistakably Delegate Arbitrability To The Arbitrator

The agreements at issue here clearly and unmistakably delegate arbitrability to the arbitrator by virtue of their sweeping arbitration provisions.  In *Momot*, the Ninth Circuit held that the parties "clearly and unmistakably agreed to arbitrate the question of arbitrability," and therefore that the district court erred in denying a stay pending

1    arbitration, because the arbitration provision at issue specifically gave the arbitrator the

2    authority to determine "the validity or application of any of the provisions of" the

3    arbitration clause in the parties' agreement.  *Momot*, 652 F.3d at 988.  The arbitration

4    clauses here are broader than the one in *Momot* and contain language that is even more

5    instructive on the issue of arbitrability.  They expressly give the arbitrator authority to

6    resolve any effort "to enforce, interpret, construe, rescind, terminate or annul" the

7    agreements, "or any provision thereof," including the arbitration provisions

8    themselves.  RJN, Ex. 1, at 3.

9        The NDAs also delegate authority to the arbitrator over "any" claim or dispute

10   arising under any of their terms (RJN, Ex. 1, at 3), which necessarily includes disputes

11   over Plaintiffs' arbitrability claims.  *See Green Tree Fin. Corp.*, 59 U.S. at 451-52.

12
             **b.**    **The NDAs' Incorporation Of The AAA Commercial
                       Arbitration Rules Clearly And Unmistakably Delegates
13                     Arbitrability To The Arbitrator**

14       The NDAs also clearly and unmistakably delegate questions of arbitrability to

15   the arbitrator through their express incorporation of the AAA Commercial Arbitration

16   Rules.  Each of the Plaintiffs agreed that "[a]ll arbitration proceedings shall be

17   conducted under the auspices of the American Arbitration Association, under its

18   Commercial Arbitration Rules."  RJN, Ex. 1, at 3.  The AAA's Commercial

19   Arbitration Rules expressly empower the arbitrator to "rule on his or her own

20   jurisdiction, including any objections with respect to the existence, scope or validity of

21   the arbitration agreement."  RJN, Ex. 4, at 18.  By virtue of its incorporation, this AAA

22   rule governs the parties' agreement in this case.  *See, e.g.*, *Awuah v. Coverall N. Am.,*

23   *Inc.*, 554 F.3d 7, 11 (1st Cir. 2009).

24       Numerous courts, including those in the litigation-related waiver cases cited

25   above, have held that incorporation of such rules is a clear and unmistakable

26   agreement to delegate arbitrability disputes to the arbitrator.  *See, e.g.*, *Wynn Resorts,*

27   *Ltd.*, 2012 WL 5489970, at *2 ("[T]he parties demonstrated their clear and

28   unmistakable intent to have an arbitrator resolve the issue of arbitrability" because they

Gibson, Dunn &
Crutcher LLP

11

"incorporat[ed] the JAMS rules."); *Guidewire Software, Inc. v. Chookaszian*, 2012 WL 5379589 at *4 (N.D. Cal. Oct. 31, 2012) ("The incorporation of the AAA rules in the arbitration agreement is clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability to the arbitrator.") (internal quotations omitted); *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005) (same); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (by incorporating AAA rules, "the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid"); *Petrofac, Inc. v. DynMcDermott Petro. Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (incorporation of the AAA Rules "present[ed] clear and unmistakable evidence that the parties agreed to arbitrate arbitrability").

**2.  Determining Whether CBS Waived Its Right To Arbitrate Turns On The Interpretation Of The NDAs' Injunctive Relief Provisions, Which The Parties Agreed Is For The Arbitrator To Decide**

The Court should also refer Plaintiffs' waiver claims to the arbitrator because resolving them would require interpreting other provisions of the NDAs that the parties agreed must be construed by the arbitrator. The NDAs expressly gave CBS the right to seek injunctive or other equitable relief in court, notwithstanding the mandatory arbitration provisions. RJN, Ex. 1, at 3 (Breach of the NDAs "shall entitle Producer to obtain an ex parte restraining order, preliminary injunction and permanent injunction."); *id.* at 4 (granting the "right to [seek] injunctive or other equitable relief as provided for in California Code of Civil Procedure 1281.8 or other relevant laws"). Therefore, determining whether CBS allegedly waived its right to arbitrate by filing suit in this Court and requesting injunctive relief (and filing applications for expedited discovery in support of its request) will turn on whether CBS's actions were consistent with that provision of the parties' agreement. *See, e.g.*, Compl. ¶¶ 25, 34-41. *E.g., Saint Agnes*, 31 Cal. 4th at 1196 (waiver requires determination of whether conduct was "inconsistent with the right to arbitrate"). In other words, in order to determine whether CBS's litigation conduct was inconsistent with the right to arbitrate, the

arbitrator will need to interpret and analyze *the language of the arbitration provision itself*—a task presumptively, and here explicitly, delegated to the arbitrator.  RJN, Ex. 1, at 3 (The parties "agree that . . . any effort by any party to . . . *interpret, [or] construe* . . . this Agreement, *or any provision thereof*, shall be resolved by binding arbitration.") (emphases added); *Green Tree Fin. Corp.*, 539 U.S. at 451-52 (compelling arbitration where parties "seem[ed] to have agreed that an arbitrator, and not a judge, would answer" a question of interpretation of the arbitration agreement).

Here, there is no question that the "expectation[] of the parties" was that an arbitrator, not a court, would interpret the injunctive relief provisions to determine whether CBS acted consistently with the contracts' terms.  *Momot*, 652 F.3d at 986. "[T]he parties' intentions control," and the Court must therefore honor the NDAs and the parties' expectations by referring the matter to arbitration.  *Id.*

### 3. Even If The NDAs Were Ambiguous, Waiver Would Presumptively Be For The Arbitrator To Decide

Even if the NDAs were ambiguous (they are not) about whether the parties agreed that litigation-related waiver is delegated to the arbitrator in this case, waiver would still be for the arbitrator to decide under the Supreme Court's directive in *Howsam* that waiver is a "procedural question" distinct from other questions of arbitrability and "presumptively *not* for the judge, but for an arbitrator to decide." *Howsam*, 537 U.S. at 84-85 ("[T]he presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'") (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Although the Ninth Circuit has not decided the question (*see Lima v. Gateway, Inc.*, No. 09-01366, 2012 WL 3594341, at *3 n.4 (C.D. Cal. Aug. 7, 2012), several circuit courts have correctly concluded that litigation-related waiver is for the arbitrator to decide.[7]  *Howsam*'s directive could not be clearer.  *Accord Nat'l Am. Ins. Co.*, 328

---

[7]  *See Republic of Ecuador*, 638 F.3d at 393; *Nat'l Am. Ins. Co.*, 328 F.3d at 466; *Qualcomm*, 466 F.3d at 1371 (construing Ninth Circuit authority to apply

*(Cont'd on next page)*

Gibson, Dunn & Crutcher LLP

F.3d at 466 (referring litigation-related waiver to arbitration because "the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability") (internal quotations and alterations omitted); *Republic of Ecuador*, 638 F.3d at 394 ("[W]aiver and estoppel generally fall into [the] . . . group of issues presumptively for the arbitrator.").  Moreover, *Howsam*'s presumption is consistent with the FAA's overarching goal "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22.  Finally, it comports with the Ninth Circuit's instruction that a "court's role under [the FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F. 3d 1126, 1130 (9th Cir. 2000).  Indeed, this instruction reflects the "strong federal policy favoring arbitration," and the requirement that courts honor valid contracts to arbitrate. *Id.* at 1128.

Plaintiffs' waiver argument, which does not fall within the purview of either of these limited judicial roles, is inconsistent with the Court's role under the FAA and the federal policy favoring arbitration generally.  Indeed, Plaintiffs' waiver argument is tantamount to a defense to the enforcement of the indisputably valid and applicable agreement to arbitrate *that the parties agreed, pursuant to the plain language of the NDAs*, should be resolved in binding arbitration. *E.g.*, *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 (characterizing allegation of waiver as a "defense to arbitrability"); *Republic of Ecuador*, 638 F.3d at 393 (same).  In accordance with those NDAs, and in recognition of the arbitrator's province to decide waiver, Plaintiffs have presented

---

*(Cont'd from previous page)*

*Howsam*'s presumption to question of conduct-based estoppel). *But see Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 13 (1st Cir. 2005), *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217 (3d Cir. 2007), *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 394 (6th Cir. 2008), and *Grigsby & Assocs., Inc. v. M Securities Investment*, 664 F.3d 1350, 1353 (11th Cir. 2011).

1    these same claims of waiver to the AAA.  RJN, Ex. 3, at 3-6.

2         Nor does the Ninth Circuit's decision in *Cox v. Ocean View Hotel Corporation*,

3    533 F.3d 1114 (9th Cir. 2008), or the Central District's decision in *In re Toyota Motor

4    Corp.*, 838 F. Supp. 2d 967 (2012), require the Court to ignore *Howsam*'s directive

5    here.  Unlike here, *Cox* did not indicate whether the agreements at issue clearly and

6    unmistakably delegated arbitrability to the arbitrator.  And in *Toyota*, the court found

7    that they had not (838 F. Supp. 2d at 992),[8] but nonetheless explained that "[t]he

8    presence of a delegation provision . . . narrows the Court's role" in determining

9    arbitrability.  *Id*. at 982.  In such instances, "the Court must examine *only* whether

10   there is a valid delegation provision and, if there is, the Court *must* enforce the

11   delegation provision by compelling arbitration and reserving for the arbitrator issues

12   that implicate the agreement to arbitrate as a whole, as well as larger issues such as the

13   validity of the contract as a whole or determination of the scope of arbitrable claims."

14   *Id*. (emphases added).  Thus, even if the Court were to accept *Cox*'s rationale that

15   enforcement of an arbitration clause is an issue for the court to decide where there is

16   no clear and unmistakable agreement between the parties to delegate the issue of

17   arbitrability to the arbitrator, *Cox* should not be expanded to cases where there *is* such

18   a clear and unmistakable agreement between the parties.  Any other rule would

19   eviscerate the Ninth Circuit's holding in *Momot v. Mastro*, 652 F.3d at 987, that "clear

20   and unmistakable" agreements "to arbitrate arbitrability" should be honored as written.

**B.    Alternatively, The Court Should Dismiss The Complaint With Prejudice Because CBS Did Not Waive Its Right To Arbitrate**

23        If this Court decides that it has the authority to resolve the arbitrability of

24   Plaintiffs' claims, it nonetheless should dismiss Plaintiffs' action because the

25   Complaint fails to establish waiver.  "[A]rbitration is strongly favored" under

26   California and federal law (*Christensen v. Dewor Devs.*, 33 Cal. 3d 778, 782 (1983);

---

8    *In re Toyota* is before the Ninth Circuit on appeal.  *See In re Toyota*, No. 12-55659 (9th Cir.).

see 9 U.S.C. § 1 et seq.), and courts uniformly "have been admonished to closely scrutinize any allegation of waiver of such [a] favored right." *Doers v. Golden Gate Bridge Highway and Trans. Dist.*, 23 Cal. 3d 180, 189 (1979) (internal quotations omitted); *Lake Communications, Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir. 1984) ("Waiver of arbitration is not readily found.").[9]  To enforce this policy, the U.S. Supreme Court has mandated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself *or an allegation of waiver*, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 (emphasis added).

In light of federal and state authority favoring arbitration, "any party arguing waiver of arbitration bears a heavy burden of proof." *Fisher v. AG Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986) (internal quotations omitted).  Waiver cannot be shown "by mere participation in litigation." *Saint Agnes*, 31 Cal. 4th at 1203. Instead, the court should consider:  "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [*e.g.*, taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party." *Saint Agnes*, 31 Cal. 4th at 1196 (internal quotation marks omitted).  Plaintiffs' allegations do not come close to satisfying this test, and thus, their Complaint fails as a

---

[9]  *See Quevedo v. Macy's Inc.*, 798 F. Supp. 2d 1122, 1129 n.2 (Feess, J.) (2011) ("[W]hether rights under a contract have been waived is a question of state law.")

matter of law.

### 1.   CBS's Pursuit Of Injunctive Relief, Which Was Expressly Permitted By The NDAs, Was Entirely Consistent With Its Right To Arbitrate

In their NDAs, Plaintiffs expressly granted CBS "the right to [seek] injunctive or other equitable relief as provided for in California Code of Civil Procedure [§]1281.8 or other relevant laws." RJN, Ex. 1, at 4. CBS's prior litigation before this Court did just that. In its initial complaint, CBS sought a declaratory judgment that Plaintiffs (and their co-defendants) committed copyright infringement, as well as preliminary and permanent injunctions under (i) the federal Copyright Act, 17 U.S.C. § 502, (ii) the CUTSA, Cal. Civ. Code § 3426.2, (iii) California's Unfair Competition law, Cal. Bus. & Prof. Code § 17203, and (iv) Plaintiffs' NDAs, *see* Cal. Civ. Proc. Code § 1281.8. RJN, Ex. 6 ¶¶ 73-123. CBS specifically sought to enjoin the defendants from "misappropriating, disclosing, or using CBS's confidential information and trade secrets" or "infringing CBS's copyright interests." *Id.* at p. 32. Because these claims were expressly permitted under the NDAs, they could not have possibly been inconsistent with the right to arbitrate.

While it is true that CBS also initially included damages claims against the defendants in that action, that fact is ultimately irrelevant because, in order for those *particular* claims to have effected a waiver, they must have had *specific prejudicial effects* on Plaintiffs. For example, in *AT&T Corp. v. Vision One Securities Systems*, 914 F. Supp. 392 (S.D. Cal. 1995), the court was presented with a motion to compel arbitration where the plaintiff had previously made numerous claims in litigation, most of which involved nonarbitrable issues and therefore were not "act[s] inconsistent with the knowledge of the right to compel arbitration." *Id.* at 396. Even though the plaintiff also brought one claim in court that was plainly covered by the arbitration agreement, "no action ha[d] occurred with respect to [that] claim," and "[t]o the extent the court-ordered expedited discovery touched on" that issue, the court found "no prejudice to either party." *Id.* at 397; *see also id.* at 396 ("Because bringing a trademark action is

1    not inconsistent with the arbitration provisions . . . discovery and attorneys' fees

2    incurred as a result of such action are not inconsistent with the arbitration

3    provisions.").  Similarly, here, Plaintiffs cannot show that CBS "substantially invoked"

4    the litigation machinery in connection with its claim for damages, or that any harm

5    followed from such actions because CBS's litigation efforts against them were focused

6    on securing injunctive and declaratory relief.

### 2. CBS's Limited Discovery Efforts Were Neither Inconsistent With The Right To Arbitrate Nor Prejudicial To Plaintiffs

9        Plaintiffs allege that the litigation "provid[ed] CBS with information it would

10   not otherwise have had for use" in the arbitration.  Compl. ¶ 69.  But as shown below,

11   this allegation fails because CBS would have had access to the same discovery (i) from

12   its claims for injunctive relief and copyright violations, (ii) from its claims against the

13   co-defendants, and/or (iii) in arbitration under the AAA rules.  Plaintiffs' allegations

14   regarding CBS's prior discovery efforts therefore do not establish acts inconsistent

15   with the right to arbitrate; nor do they satisfy the "critical" element of prejudice

16   required to show waiver.  *See Saint Agnes*, 31 Cal. 4th at 1203; *see also ATSA of Cal.,*

17   *Inc. v. Continental Ins. Co.*, 702 F.2d 172, 175 (9th Cir. 1983) ("[I]nconsistent

18   behavior alone is not sufficient; the party opposing the motion to compel arbitration

19   must have suffered prejudice.").

20       Moreover, the question is not whether CBS obtained information through

21   discovery that could be used in arbitration.  Indeed, if this were the test, it would

22   amount to a *per se* rule that participation in litigation discovery—even on

23   nonarbitrable claims—establishes prejudice.  But, as shown below (in § III.B.2.a),

24   courts have consistently held that parties may conduct discovery on nonarbitrable

25   claims related to arbitrable claims without waiving their right to arbitrate.  The

26   applicable test is whether discovery obtained by a party was "*not available* in

27   arbitration." *Saint Agnes*, 31 Cal. 4th at 1196 (emphasis added).  This is a test that

28   Plaintiffs fail.

### a.   CBS's Discovery Requests Were Incidental To Its Request For Injunctive Relief

The Complaint alleges that CBS filed an *ex parte* discovery application four days after filing its initial Complaint (Compl. ¶ 32), an *ex parte* discovery application with Magistrate McDermott on May 31, 2012 (Compl. ¶ 36), and a motion to compel on June 13, 2012 (Compl. ¶ 40).[10]  But none of these efforts were incompatible with CBS's right to arbitrate, because each sought discovery for the specific purpose of supporting a TRO application or a motion for a preliminary injunction.  *See, e.g.*, RJN, Ex. 8, at 1 ("CBS requests that this Court enter an order granting CBS expedited discovery to enable it to bring a motion for a preliminary injunction."), Ex. 10, at 1 (captioned "Application for an Immediate Scheduling Conference and to Compel Discovery for a Motion for a Preliminary Injunction"), Ex. 14, at 1 ("CBS intends to seek immediate relief, through a TRO or preliminary injunction.").

In *Fisher v. AG Becker Paribas Inc.*, 791 F.2d at 693, the Ninth Circuit considered a waiver claim arising from the actions of a litigant who (like CBS) raised both arbitrable and nonarbitrable claims in federal court and (unlike CBS) engaged in "extensive discovery" on the nonarbitrable claims.  *Id*. at 693, 697.  The Ninth Circuit reversed the denial of a motion to compel, finding that the fact that the litigant "engaged in discovery concerning the nonarbitrable claims does not constitute sufficient prejudice to establish waiver."  *Id.* at 697.  Similarly, here, the discovery CBS (unsuccessfully) sought was solely in support of its request for injunctive relief, which it was indisputably entitled to pursue in federal court per the express language of the NDAs.  *See supra*, Section II.A.  The discovery was therefore neither prejudicial, nor inconsistent with the right to arbitrate.  *See Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) ("[E]ven extensive discovery into both arbitrable and non-arbitrable claims before moving to compel arbitration is

---

[10]   These discovery requests were all denied.  *See* Compl. ¶¶ 33, 37, 46; RJN, Exs. 9, 11, 17.

Gibson, Dunn & Crutcher LLP

insufficient prejudice for a waiver if that discovery is available for trial of the non-arbitrable claim in federal district court."); *Irwin v. UBS Painewebber, Inc.*, 324 F. Supp. 2d 1103, 1111 (C.D. Cal. 2004) ("[T]he defendant did not waive its right to arbitrate through … [discovery], because … [it] only addressed the nonarbitrable claims.").

### b.   Plaintiffs Were Not Prejudiced By Discovery Offered By Their Co-Defendants

Plaintiffs make much of the fact that CBS "demand[ed]" discovery, "sought" depositions, and "requested" document production.  Compl. ¶¶ 5, 32-36, 40.  But according to the Complaint, the only discovery produced by *any* of the defendants in that action (though not the Plaintiffs here) was a collection of documents and a single deposition—both of which were "offered" by those defendants.  Compl. ¶ 37.  None of the defendants was ever ordered to produce any discovery or sit for any deposition they did not voluntarily agree to beforehand, as Magistrate Judge McDermott's June 1, 2012 Order makes clear.  RJN, Ex. 11, at 2; Ex. 12, at 1 (noting defendants "*agreed*" to produce documents and that the deposition of Mr. Rosen was "*proposed*" by the defendants) (emphases added); *see also* RJN, Ex. 15, at 11 (also noting defendants proposed the deposition).

What is more, this "*limited* expedited discovery" (Compl. ¶ 34 (emphasis added)) was produced by other defendants in the federal action—ABC and Keep Calm—who were not subject to any arbitration agreements.  RJN, Ex. 20, ¶ 2.  And even though CBS deposed Mr. Rosen in the federal action, his deposition was offered under Rule 30(b)(6)—Plaintiffs do not allege that he appeared in his individual capacity.  RJN, Ex. B to Ex. 16, at 1.  To the extent "limited" discovery was obtained from Plaintiffs' former co-defendants, (1) who are not parties to the NDAs, (2) who offered the discovery, and (3) against whom CBS could not have initiated arbitration, CBS was not acting inconsistently with the agreement to arbitrate.  Plaintiffs therefore cannot meet their "heavy burden" to show prejudice, and thus waiver.  *Saint Agnes*, 31

Cal. 4th at 1195; *see also Lake Communications*, 738 F.2d at 1477 (plaintiff had "shown no prejudice" because defendant initiated "only limited discovery . . . consisting primarily of the taking of the deposition of [plaintiff's] president.").[11]

### c. Plaintiffs Admit That The Discovery Produced In The Federal Action Was Solely For The Copyright Claims, Which Are Not Part Of The Pending Arbitration

None of the discovery produced in the prior litigation was prejudicial to the Plaintiffs in any event, because it was all responsive to CBS's federal Copyright Act claims that are not at issue in the arbitration.  As Magistrate McDermott noted, the defendants "agreed to produce . . . the most recent documents sufficient to show the anticipated elements of the Glass House, and to provide periodic updates through its airing date on June 18, 2012."  RJN, Ex. 12, at 1.  The defendants "agreed" to produce these documents specifically because they acknowledged their relevance to CBS's request for injunctive relief on its copyright claims.  *Id.*, Ex. 15, at 11 ("On the copyright claims, the discovery that CBS needs to move for injunctive relief is very narrow and Defendants have agreed to provide it.").  In fact, the defendants took the position that all "additional discovery . . . beyond core copyright discovery [wa]s prohibited by Section 2019.210 [of the California Code of Civil Procedure]" and therefore refused to provide anything other than what they deemed "copyright discovery."  *Id.* at 15.

Similarly, the sole deposition taken by CBS was expressly "limited to copyright issues" by Magistrate McDermott.  RJN, Ex. 12, at 1.  Plaintiffs allege that "CBS spent most of the deposition asking questions related to its trade secret and breach of contract claims" (Compl. ¶ 38), but CBS consistently explained that questions related

---

[11] Moreover, given that each of the Plaintiffs was an employee of ABC and/or the other co-defendants during the litigation (*see* Compl. ¶¶ 17-19, 22, 24), any discovery they provided regarding the production or development of *The Glass House* would have been available to CBS even if CBS had not sued them individually.  *See A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (employer's discovery obligations extend to information in the custody or control of its employees).

to the behind-the-scenes development of *The Glass House* were reasonably calculated to lead to admissible evidence on the copyright claims. *See* RJN, Ex. 10, at 12 (arguing that discovery about production processes was calculated to lead to admissible evidence regarding defendants' "intent to copy" and "access" to copyrightable expression).[12]  Accordingly, because CBS's copyright claims in the federal action are not at issue in the arbitration (RJN, Ex. 2), the "copyright discovery" was not inconsistent with CBS's right to arbitrate and therefore cannot serve as a basis for Plaintiffs to claim prejudice. *See Fisher*, 791 F.2d at 697; *Van Ness*, 862 F.2d at 759; *Irwin*, 324 F. Supp. 2d at 1111.[13]

### d.   There Is No Prejudice Because The Same Type Of Discovery Taken In The Federal Action Is Available In Arbitration

As discussed above, the NDAs expressly incorporate the AAA rules.  RJN, Ex. 1, at 3.  And those rules specifically (a) contemplate that the parties will "exchange . . . documents," (b) permit "such discovery as may be agreed upon," and (c) authorize the arbitrator to "order depositions of . . . such persons who may possess information determined by the arbitrator(s) to be necessary to determination of the matter."  RJN, Ex. 4, at 33.[14]  Accordingly, because Plaintiffs were subject to no more discovery than they would have been compelled to respond to under the AAA Rules to which they agreed, they cannot show prejudice. *Saint Agnes*, 31 Cal. 4th at 1196.

---

[12]  Even if this allegation were true (which CBS disputes), Plaintiffs do not allege that Mr. Rosen was compelled to answer such questions (given Magistrate McDermott's order to the contrary) or that his counsel was unable to object to it.

[13]  Even assuming that CBS took "trade secret" discovery—which the defendants in that action vehemently opposed—there is no question that it would have been relevant to CBS's request for an injunction under CUTSA, and accordingly, would have been authorized under the NDAs. *See supra*, § III.B.2.a; RJN, Ex. 6 ¶¶ 90-106, Ex. 13, at 17 (applying for TRO based on trade secret claims).

[14]  The Procedures for Large, Complex Commercial Disputes apply to all cases in which the disclosed claim or counterclaim of any party is at least $500,000.  RJN, Ex. 4, at 9.  This includes CBS's claims.  Compl. ¶ 6.  The AAA Employment Rules similarly provide for discovery.  RJN, Ex. 5, at 23.

### 3.    Plaintiffs Were Not Prejudiced By Any Delay

CBS filed its complaint in this Court on May 10, 2012.  RJN, Ex. 6.  The Court denied CBS's TRO application on June 21, 2012.  Compl., Ex. A.  CBS filed its arbitration demand on July 30, 2012—39 days after the TRO application was denied, less than three months after the filing of the lawsuit, and on the same day as it filed its First Amended Complaint dismissing Plaintiffs from the case.[15]  Under these facts, Plaintiffs have not met their burden to establish prejudice from delay.

To the contrary, courts have held that parties were permitted to pursue arbitration after litigating for much longer.  For example, in *Bailey v. Household Finance Corp. of California*, 2011 WL 5118723 at *4 (S.D. Cal. Oct. 28, 2011), the court allowed a party to compel arbitration approximately ten months after it filed its initial pleading.  Even crediting the moving party's explanation that for part of that period it "could have reasonably believed" that the relevant arbitration clause was unenforceable, more than four months elapsed between the Supreme Court decision clearly holding that such clauses were enforceable and the moving party's motion to compel arbitration.  *Id.* at *1, 3 (motion to compel arbitration filed on September 14, 2011); *see AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) (decided on April 27, 2011).  Plainly, litigation that lasts less than four months cannot establish prejudicial delay.  *Nelson v. Louisiana Elec. Rig Serv.*, 2006 WL 5671234 at *7 (C.D. Cal. Feb. 22, 2006) (Feess, J.) ("The four month delay in making the demand was far shorter than delays in other cases that courts found acceptable.").

### 4.    Plaintiffs' Remaining Prejudice Allegations Fail As A Matter Of Law

Plaintiffs allege that they were required to "incur unnecessary expense and effort during litigation."  Compl. ¶ 69.  But this is precisely the kind of effect that courts consistently have found to be inadequate to establish prejudice for the purposes of waiver.  *See, e.g.*, *Saint Agnes*, 31 Cal. 4th at 1203; *Quevedo*, 798 F. Supp. 2d at 1132

---

[15]  The Court never set a trial date or even a Rule 16 Conference.  RJN, Ex. 18.

Gibson, Dunn & Crutcher LLP

1   (Feess, J.) ("The legal expenses . . . incurred do not suffice to show prejudice.").

2   Indeed, prejudice must be something more than litigation expenses and attorneys' fees,

3   because otherwise it could be established whenever the moving party "merely

4   participat[ed] in litigation." *Saint Agnes*, 31 Cal. 4th at 1203.  This, of course, is not

5   the law.  *Id.* ("Because merely participating in litigation, by itself, does not result in a

6   waiver, courts will not find prejudice where the party opposing arbitration shows only

7   that it incurred court costs and legal expenses.").

8          Plaintiffs also allege that the litigation gave CBS the "opportunity to view

9   Plaintiffs' litigation responses and arguments in advance of the arbitration" and that

10  the prior litigation was "public."  Compl. ¶ 69.  Even assuming this to be true, this

11  "opportunity," and the alleged public nature of the litigation, was wholly attributable to

12  CBS's efforts to obtain preliminary equitable relief—efforts explicitly authorized by

13  the arbitration agreements.  *See supra*, Section III.B.1.  Since these allegations of

14  "prejudice[]" Comp. ¶ 69, do not arise from any actions inconsistent with the

15  agreement to arbitrate, they are unavailing as a matter of law.  *See AT&T Corp.*, 914 F.

16  Supp. at 397 (limiting prejudice inquiry to arbitrable claim where party brought

17  litigation on both arbitrable and nonarbitrable claims).  Because all of Plaintiffs'

18  purported harms would have occurred if CBS had only sought injunctive relief, none

19  of them is sufficient, or even relevant, to establish prejudice.  Plaintiffs have therefore

20  failed to prove waiver of the right to arbitrate.

21  **C.    Plaintiffs' Claims Should Be Dismissed Or, Alternatively, Stayed**

22         Each of Plaintiffs' claims for relief arises under the NDAs and/or are directly

23  related to the pending arbitration.  *See* Compl. ¶¶ 61-73 (First Claim for declaration

24  that CBS waived its right to arbitrate), ¶¶ 74-84 (Second Claim for declaration that

25  Plaintiffs did not breach the NDAs), ¶¶ 85-89 (Third Claim for breach of NDAs),

26  ¶¶ 90-91 (Fourth Claim for injunctive relief against arbitration).

27         If the Court refers the question of waiver to the arbitrator, it should dismiss with

28  prejudice the First Claim and Fourth Claim under Rules 12(b)(1), 12(b)(3), and/or

Gibson, Dunn &
Crutcher LLP

12(b)(6) of the Federal Rules of Civil Procedure, because these claims are predicated on CBS's alleged waiver of the right to arbitrate.  The Court should also dismiss the Second Claim with prejudice because either (a) the arbitrator will find no waiver and then make a binding determination of the issue, or (b) if the arbitrator finds waiver, the arbitration will be dismissed and the claim for declaratory relief will be moot.  The Court should dismiss, or alternatively stay the Third Claim pursuant to Section 3 of the FAA, pending the arbitrator's decision on waiver.  *See* 9 U.S.C. § 3.

If the Court rules that CBS has not waived its right to arbitrate, it should dismiss the action in its entirety, with prejudice, pursuant to Rules 12(b)(1), 12(b)(3) and/or 12(b)(6) so that the claims can proceed in arbitration.

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint under Rule 12(b)(1), 12(b)(3) and/or 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, stay the proceedings pending the arbitrator's determination regarding waiver.

Dated: December 14, 2012                   GIBSON, DUNN & CRUTCHER LLP


By:   ___/s/ Theane Evangelis Kapur___
                         Theane Evangelis Kapur

Attorneys for CBS Broadcasting Inc.

101409477.12

Gibson, Dunn &
Crutcher LLP