1  GLENN D. POMERANTZ (State Bar No. 112503)
   Glenn.Pomerantz@mto.com
2  JONATHAN E. ALTMAN (State Bar No. 170607)
   Jonathan.Altman@mto.com
3  CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
   Carolyn.Luedtke@mto.com
4  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue
5  Thirty-Fifth Floor
   Los Ángeles, CA  90071-1560
6  Telephone:  (213) 683-9100
   Facsimile:   (213) 687-3702
7
   DEVIN A. MCRAE (State Bar No. 223239)
8  dmcrae@earlysullivan.com
   EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
9  6420 Wilshire Blvd., 17th Floor
   Los Angeles, California 90048
10 Telephone:  (323) 301-4660
   Facsimile:   (323) 301-4676
11
   Attorneys for Plaintiffs
12 KENNY ROSEN, CORIE HENSON, AND MICHAEL
   O'SULLIVAN
13

14           **UNITED STATES DISTRICT COURT**

15           **CENTRAL DISTRICT OF CALIFORNIA**

16                **WESTERN DIVISION**

17

| | |
|---|---|
| 18  Kenny Rosen, Corie Henson, and Michael O'Sullivan, | CASE NO. CV12-09751 GAF (JEMx) |
| 19 | **PLAINTIFFS' MEMORANDUM** |
| 20      Plaintiffs, | **OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR** |
| 21   vs. | **PARTIAL SUMMARY JUDGMENT** |
| 22  CBS Broadcasting Inc., | Hearing |
| 23      Defendant. | Date:       January 28, 2013 |
|  | Time:       9:30 a.m. |
| 24 | Place:       Roybal, Ctrm. 740 |
|  | Judge:       Hon. Gary A. Feess |

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................... 1

II.   FACTS ................................................................................................. 3

    A.  CBS Files A Complaint, Seeks Damages Against Plaintiffs, And Moves For Expedited Discovery, But Neither Invokes Nor Preserves Its Right To Arbitration ................................................. 3

    B.  CBS Files A TRO Application, But Neither Invokes Nor Preserves Its Right To Arbitration ............................................... 5

    C.  CBS Loses The TRO, Loses Its Expedited Discovery Motion, Faces The Loss Of Its Trade Secret Claims, And Flees The Federal Forum ................................................................................... 6

III.  ARGUMENT ..................................................................................... 8

    A.  This Court Should Decide The Waiver By Conduct Issue ........................ 8

        1.  Assuming The Parties Could Ever Contract To Delegate The Issue Of Waiver To The Arbitrator, They Did Not Do So Here ....................................................................................... 8

        2.  In Any Event, The Parties Cannot Make A Contract Limiting The Court's Inherent Power To Control The Proceedings Before It ......................................................... 10

    B.  CBS Waived Its Right To Arbitrate ....................................... 13

        1.  CBS Intentionally Bypassed The California Arbitration Act's "Safe Harbor" For Plaintiffs Seeking Provisional Injunctive Remedies In Court And Filed A Complaint Inconsistent With Any Right To Arbitrate ................................................. 15

        2.  CBS's Forum Shopping Prejudiced Plaintiffs And Waived Its Right To Arbitrate ........................................................ 17

        3.  CBS Sought To Arbitrate After Important Intervening Steps Had Occurred With Regard To Trade Secret Discovery, Again Prejudicing Plaintiffs ............................................. 20

        4.  CBS's Conduct Prejudiced Plaintiffs By Denying Them The Efficiencies Of Arbitration ......................................... 22

IV.  CONCLUSION ................................................................................ 24

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page

FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ....................................8

*Banc of America Securities LLC v. Independence Tube Corp.*,
2010 WL 1780321 (N.D. Ill. May 4, 2010) ........................................................8

*California Trucking Ass'n v. Brotherhood of Teamsters & Auto Truck Drivers*,
679 F.2d 1275 (9th Cir. 1981)..............................................................2, 12, 13

*Chen v. Dillard's, Inc.*,
2012 WL 4127958 (D. Kan. Sept. 19, 2012) ...................................................10

*ConWest Resources, Inc. v. Playtime Novelties, Inc.*,
2007 WL 1288349 (N.D. Cal. May 1, 2007) ...................................2, 18, 19, 22

*Cox v. Oceanview Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) ........................................................................1, 8

*Delaware Coalition for Open Government v. Strine*,
--- F. Supp. 2d ----, 2012 WL 3744718 (D. Del. Aug. 30 2012).......................23

*Ehleiter v. Grapetree Shores, Inc.*,
482 F.3d 207 (3d Cir. 2007) ..............................................................2, 9, 10, 11

*El Dorado Irr. Dist. v. Traylor Bros.*, Inc., 2006 WL 902561, at *6 (E.D. Cal. Apr. 5, 2006)...................................................................................................14

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938, 115 S. Ct. 1920 L. E. 2d 985 (1995) ...................................2, 9, 10

*In re Toyota Motor Corp. Unintended Accel. Marketing, Sales Practices & Prod. Liab. Litig.*,
838 F. Supp. 2d 967 (C.D. Cal. 2012).................................................................8

*Marie v. Allied Home Mortgage Corp.*,
402 F.3d 1 (1st Cir. 2005) ................................................................2, 9, 10, 11

# TABLE OF AUTHORITIES

**Page**

*Quevedo v. Macy's, Inc.*,
   798 F. Supp. 2d 1122 (C.D. Cal. 2011) ................................................................. 13

*Reid Burton Construction, Inc. v. Carpenters District Council*,
   535 F.2d 598 (10th Cir. 1976) ................................................................... 12, 13

*Republic Ins. Co. v. PAICO Receivables, LLC*,
   383 F.3d 341 (5th Cir. 2004) ......................................................................... 13

*Riverside Publ'g Co. v. Mercer Publ'g LLC*,
   829 F. Supp. 2d 1017 (W.D. Wash. 2011) ..................................... 3, 16, 19, 20

*Roth v. Madison Nat'l Life Ins. Co.*,
   702 F. Supp. 2d 1174 (C.D. Cal 2010) ............................................................ 8

*Wang Labs v. Mitsubishi Electronics America*,
   860 F. Supp. 1448 (C.D. Cal. 1993) ................................................................ 8

*Wolsey, Ltd. v. Foodmaker, Inc.*,
   144 F.3d 1205 (9th Cir. 1998) .......................................................................... 8

**STATE CASES**

*Adolph v. Coastal Auto Sales, Inc.*
   184 Cal. App. 4th 1443 (2010) ...................................................................... 20

*Advanced Modular Sputtering, Inc. v. Superior Court*,
   132 Cal. App. 4th 826 (2005) ....................................................................... 21

*Christensen v. Dewor Developments*,
   33 Cal. 3d 778 (1983) .................................................................. 13, 14, 22, 23

*Cronus Investment, Inc. v. Concierge Services*,
   35 Cal. 4th 376 (2005) ..................................................................................... 8

*Gilbert Street Developers, LLC v. La Quinta Homes, LLC*,
   174 Cal. App. 4th 1185 (2009) ....................................................................... 2, 9

*Guess?, Inc. v. Superior Court*,
   79 Cal. App. 4th 553 (2000) ......................................................................... 23

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page**

*McConnell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  105 Cal. App. 3d 946 (1980) ................................................................. 20

*McMillin Dev., Inc. v. Home Buyers Warranty*,
  68 Cal. App. 4th 896 (1998) ........................................................ 2, 9, 11

*Saint Agnes Medical Ctr. v. PacifiCare of California*,
  31 Cal. 4th 1187 (2003) ........................................................... 14, 20

*State Farm Mut. Auto. Ins. Co. v. George Hyman Const. Co.*,
  715 N.E.2d 749 (Ill. App. Ct. 1999) ........................................... 13

*Writers Guild of America, West, Inc. v. Screen Gems, Inc.*,
  274 Cal. App. 2d 367 (1969) ................................................... passim

STATUTES AND RULES

9 U.S.C. §§ 1-16 .................................................................................. 8

9 U.S.C. § 3 ......................................................................................... 11

29 U.S.C. § 185 ................................................................................... 13

Cal. Civ. Proc. Code § 1280 et seq. .................................................. 8

Cal. Civ. Proc. Code § 1281.2(a) ........................................... 1, 9, 11

Cal. Civ. Proc. Code § 1281.8 ............................................. 9, 15, 16, 17

Cal. Civ. Proc. Code § 2019.210 ........................................... 7, 21, 22

Fed. R. Civ. P. 56(a), (b), (c) ............................................................. 8

# I.   **INTRODUCTION**

After a flurry of extremely intensive litigation, including multiple *ex parte* applications, expedited discovery and extensive briefing, this Court issued an Order on June 21, 2012 denying CBS Broadcasting Inc.'s ("CBS") request to enjoin the ABC television network from airing its new reality program *The Glass House*. SUF ¶ 40.[1]   CBS also sought an injunction against the three individual defendants in the case, barring them from revealing alleged CBS "trade secrets."   The Court found that CBS was unlikely to succeed on its claims for copyright infringement or trade secret misappropriation.   Thereafter, CBS dismissed its federal court action against ABC and the three individual defendants, but filed arbitration demands against the individuals.   At no time before the Court's June 21 Order did CBS inform the Court, ABC, or the individuals that CBS wanted to arbitrate any aspect of the dispute.   It was only after the parties had invested significant resources in the federal court lawsuit, and after this Court expressed serious concerns about the merits of CBS's case, that CBS suddenly departed federal court for the presumably friendlier confines of arbitration.

This Court is not a rehearsal hall.   Nor can CBS test its case here, and then upon receiving several unfavorable rulings decide its claims would play better in arbitration.   Under governing California law, CBS's obvious forum shopping has waived its right to arbitrate.   *Writers Guild of America, West, Inc. v. Screen Gems, Inc.,* 274 Cal. App. 2d 367, 373-74 (1969).   Moreover, the Court should decide the waiver issue now, because the facts at issue are undisputed.

Although CBS suggested during the Rule 7.3 conference concerning this Motion that an arbitrator should resolve the waiver issue, both federal and state law make clear that waiver is presumptively for the Court to decide.   *Cox v. Oceanview Hotel Corp.,* 533 F.3d 1114, 1119-20 (9th Cir. 2008); Cal. Civ. Proc. Code

---

[1] Plaintiffs' Separate Statement of Undisputed Facts ("SUF").

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

§ 1281.2(a). Assuming that presumption can ever be rebutted with regard to waiver by litigation conduct, it certainly cannot be rebutted absent a showing that the parties' "clearly and unmistakably" delegated the issue of waiver to the arbitrator. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. E. 2d 985 (1995); *Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 15 (1st Cir. 2005); *Gilbert Street Developers, LLC v. La Quinta Homes, LLC*, 174 Cal. App. 4th 1185, 1190-92 (2009). To meet the "clear and unmistakable" standard, CBS must demonstrate that the contracting parties expressly referred to waiver, or a similar term, in their arbitration agreement. *Marie*, 402 F.3d at 15; *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221 (3d Cir. 2007). Because the parties did not do so, CBS can never meet the requisite standard.

Moreover, even if the parties *had* expressly referenced waiver in their arbitration agreement, the issue would still be for the Court. First, both federal and state law assign it to the Court. *Marie*, 402 F.3d at 14 n.10; *McMillin Dev., Inc. v. Home Buyers Warranty,* 68 Cal. App. 4th 896, 908-09 (1998). Second, the Ninth Circuit has made clear that a party cannot use an arbitration agreement to divest the Court of its inherent power to control the legal proceedings before it, including the power of the Court to find waiver based on litigation conduct that occurred before the Court, as the conduct here did. *California Trucking Ass'n v. Brotherhood of Teamsters & Auto Truck Drivers*, 679 F.2d 1275, 1283 (9th Cir. 1981).

Turning to the substance of the waiver issue, the cases consistently hold that CBS's behavior in (1) hauling Plaintiffs into federal court without even a whisper that it wanted to arbitrate, (2) forcing Plaintiffs to engage in extremely high-profile, expensive, and expedited litigation of disputes obviously covered by the parties' arbitration agreements, (3) seeking a temporary restraining order against Plaintiffs, and (4) suddenly fleeing the judicial forum once this Court ruled against it, constitutes the worst sort of forum shopping and results in waiver of arbitration as a matter of law. *Writers Guild,* 274 Cal. App. 2d at 373-74; *ConWest Resources, Inc.*

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

*v. Playtime Novelties, Inc.,* 2007 WL 1288349, at *5 (N.D. Cal. May 1, 2007);

*Riverside Publ'g Co. v. Mercer Publ'g LLC,* 829 F. Supp. 2d 1017, 1020 (W.D.

Wash. 2011).  As one California court explained, "[i]n sporting terminology, [CBS]

having been called out on strikes in the first inning, is not entitled to move the ball

game across the street and start over again."  *Writers Guild,* 274 Cal. App. 2d at

375.  This Court should grant summary judgment on Plaintiffs' First Claim.

## II.     FACTS[2]

### A.     CBS Files A Complaint, Seeks Damages Against Plaintiffs, And Moves For Expedited Discovery, But Neither Invokes Nor Preserves Its Right To Arbitration

In the Spring of 2012, production work began in earnest for a summer

premiere of *The Glass House*, a new reality television show to be broadcast on

ABC.  Plaintiff Kenny Rosen served as *The Glass House* executive producer and

"show runner;" Plaintiff Corie Henson was ABC's vice president of alternative

programming, and part of the internal team that worked on *The Glass House*;

Plaintiff Michael O'Sullivan was a co-executive producer, in charge of developing

competitions for the show.  All three had worked in the past for the CBS program

*Big Brother*, and while employed at *Big Brother,* all three had signed non-

disclosure agreements containing broad mandatory arbitration provisions (the

"NDAs").  SUF ¶ 1.

On May 4, 2012, CBS sent a letter threatening litigation to The Walt Disney

Company's general counsel (Disney is the ultimate parent company of ABC).  SUF

¶¶ 4-6.  The letter demanded that ABC halt production of *The Glass House*,

claiming among other things that Plaintiffs must have breached their NDAs and

revealed *Big Brother* "trade secrets" while producing the show.  Although CBS's

May 4 letter quoted the NDAs, it made no mention either of arbitration or of the

---

[2] Plaintiffs' Separate Statement of Undisputed Facts contains the undisputed facts necessary to determine the issue for decision in this Motion.  Some additional facts are included in this section as background.

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

NDAs' arbitration provision.

On May 10, 2012, CBS filed a complaint (the "CBS Complaint") in the United States District Court for the Central District of California against Plaintiffs, as well as against several corporate entities, including ABC entities (collectively "ABC"). SUF ¶ 8. CBS alleged Plaintiffs had breached their NDAs, based on Plaintiffs' supposed inevitable disclosure of undefined "confidential information." SUF ¶ 9. CBS also claimed that Plaintiffs had misappropriated so-called "trade secrets" in the *Big Brother* "story producing process," the "technical setup of the *Big Brother* house," and other aspects of the *Big Brother* show. SUF ¶¶ 10-18.

CBS claimed that Plaintiffs each owed CBS $500,000 in liquidated damages for each separate act of misappropriation, based on the liquidated damages provision in the NDA. SUF ¶ 19. CBS also accused Plaintiffs and ABC of copyright infringement, SUF ¶ 8, and sought an injunction to prevent production of *The Glass House.* SUF ¶ 20.

The Complaint did not (1) indicate that CBS needed injunctive relief to maintain the effectiveness of arbitration; (2) request a stay of all other issues raised in the Complaint pending arbitration; (3) reserve CBS's right to arbitrate; or (4) mention arbitration at all.

On May 14, 2012, four days after filing its Complaint, CBS moved for expedited discovery, including written responses and the production of voluminous documents by May 18. SUF ¶¶ 22-23. CBS also demanded ten depositions—all the depositions to which CBS would have been entitled under the Federal Rules in an ordinary discovery period—between May 24 and May 31. SUF ¶ 23. CBS indicated it wanted to file a motion for preliminary injunction by June 4, 2012. *Id.*

On May 15, 2012, CBS's counsel sent an email to counsel for Plaintiffs in this matter, stating:

> Folks, I want to alert you that we are going to be filing an amended complaint this afternoon. We will be dropping all damage claims against [Plaintiffs] in this proceeding, and will

MEMORANDUM ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

1                      be seeking only injunctive relief as to them, under CCP 1281.8.

2

3    SUF ¶ 26.  Despite the statements in CBS's May 15, 2012 email, CBS neither filed

4 an amended complaint nor dropped its damage claims against Plaintiffs on the

5 afternoon of May 15.  Nor did CBS do so the next day, the next week, or, for that

6 matter, at any time before the Court denied CBS's request for a temporary

7 restraining order.

8         On May 25, 2012, the District Court denied CBS's motion for expedited

9 discovery and ordered the parties to resolve their discovery disputes before the

10 Magistrate Judge.  SUF ¶ 27.

11         On May 31, 2012, CBS filed another *ex parte* application for expedited

12 discovery, this time with the Magistrate Judge.  SUF ¶ 28.  The Magistrate Judge

13 granted CBS some expedited discovery, including an order that Plaintiffs and ABC

14 produce limited documents by June 2, and an order that Plaintiff Rosen sit for a

15 seven-hour deposition on Sunday, June 3, 2012.  SUF ¶ 30.

16         On June 3, CBS deposed Mr. Rosen, asking questions about the CBS

17 Complaint's trade secret and breach of contract allegations.  CBS refers to the

18 testimony from this deposition in its current arbitration demand.  SUF ¶ 31.

19       **B.**      **CBS Files A TRO Application, But Neither Invokes Nor Preserves Its Right To Arbitration**

20

21         On June 7, 2012, CBS filed its *ex parte* application for a temporary restraining

22 order.  SUF ¶ 32.  Like the CBS Complaint, the application did not purport to

23 reserve CBS's right to arbitration, did not suggest that CBS needed provisional relief

24 to maintain the effectiveness of its arbitral remedy, or refer to arbitration at all.  *Id.*

25         On June 11, Plaintiffs and ABC opposed CBS's *ex parte* application, SUF ¶

26 33, and on June 12, CBS filed its reply memorandum in support of a TRO.  SUF ¶

27 34.

28

MEMORANDUM ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

1   On June 13, CBS, ABC and Plaintiffs filed a joint stipulation in which CBS

2   sought to compel still further discovery from Plaintiffs and ABC.  SUF ¶ 35.

3   On June 15, 2012, the District Court held a hearing on CBS's *ex parte*

4   application for a restraining order.  SUF ¶ 37.  The Court tentatively denied the

5   application, observing that CBS "has not persuaded me that it is likely to succeed

6   on the merits of either [its trade secret or copyright] claim."  *Id.*

7   Moments after leaving the courtroom, CBS issued a statement to the press,

8   proclaiming:

9   > Win, lose or draw on the temporary restraining order, we
   > intend to proceed with our claims against Disney/ABC . . . .

10  > *At the same time we will move forward with our individual*
   > *claims for liability and liquidated damages against any*

11  > *current The Glass House producer who violated their Big*
   > *Brother confidentiality agreement.*

12  SUF ¶ 38 (emphasis added).

13
    **C.**      **CBS Loses The TRO, Loses Its Expedited Discovery Motion, Faces**

14  **The Loss Of Its Trade Secret Claims, And Flees The Federal**
    **Forum**

15

16  On June 21, 2012, the Court issued its 16-page order denying CBS's

17  application for a TRO.  SUF ¶ 40.  The Court "entertain[ed] serious doubts as to

18  CBS's ability to demonstrate either [1] that the purported trade secrets [supposedly

19  misappropriated] qualify for protection; or [2] that Defendants are actively

20  misappropriating any such trade secrets."  SUF ¶ 41.  The evidence indicated to the

21  Court "that Big Brother's alleged trade secrets were either already known in the

22  business . . ., were readily capable of 'reverse engineering' . . ., or were not

23  adequately protected as trade secrets."  SUF ¶ 42.

24  After the Court issued its decision, CBS responded with another press

25  release, further escalating its public attack on Plaintiffs and other former *Big*

26  *Brother* employees:

27  > This is only one preliminary step in a long road . . . . *[W]e*
   > *will move forward with our individual claims for liability and*

28  > *liquidated damages against any current "Glass House"*

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

> *producer who violated their "Big Brother" confidentiality agreement.*

SUF ¶ 45 (emphasis added).

On June 26, 2012, the Magistrate Judge issued an order denying CBS's motion to compel further expedited discovery.  SUF ¶ 46.  The Magistrate Judge found that CBS's trade secret disclosures had been inadequate pursuant to California Code of Civil Procedure section 2019.210 and that "CBS may wish to sharpen its trade secret disclosure now that it has the benefit of the District Court's Order.  *However, CBS's next attempt must be its last." Id.* (emphasis added).

On June 25, 2012, counsel for all sides met and conferred regarding Plaintiffs' and ABC's intention to file a motion to dismiss.  SUF ¶ 47.  CBS did not indicate that it would immediately dismiss its claims or amend its complaint.  *Id.* On July 2, 2012, Plaintiffs and ABC filed their joint motion to dismiss, outlining in detail the reasons why they believed CBS's claims failed as a matter of law.  SUF ¶ 48.  Shortly thereafter, CBS suddenly expressed a desire to file an amended complaint.  On July 19, 2012, the parties agreed to extend CBS's time to respond to Plaintiffs' and ABC's motion to dismiss until July 30, 2012.  SUF ¶ 49.

On July 30, CBS filed its First Amended Complaint, dropping Plaintiffs from its claims.  SUF ¶ 51.  On the same day, CBS filed its arbitration demand (the "Demand") against Plaintiffs.  SUF ¶ 52.

The Demand made the same trade secret and breach of contract allegations against Plaintiffs that appeared in the Complaint and which the Court found unlikely to succeed.  SUF ¶¶ 53-54 (also referring to Rosen deposition).

A month later, with ABC's renewed motion to dismiss and an anti-SLAPP motion looming, CBS voluntarily dismissed its federal lawsuit against ABC.  SUF ¶ 56.  Although the NDAs' arbitration provision specifically makes the fact of arbitration "confidential," CBS announced to the press that "we filed in federal court this morning a voluntary dismissal without prejudice of our claims against

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

ABC.  The contract and trade secrets claims against former *Big Brother* producers for violating their confidentiality agreements *will continue separately in arbitration*."  SUF ¶ 57 (emphasis added).

## III.   ARGUMENT

Summary judgment is appropriate on "all or any part" of a claim where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a), (b), (c); *see Wang Labs v. Mitsubishi Electronics America*, 860 F. Supp. 1448, 1451 (C.D. Cal. 1993).  "[W]hen addressing a motion for summary judgment, the Court must decide whether there exist 'any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  *Roth v. Madison Nat'l Life Ins. Co.*, 702 F. Supp. 2d 1174, 1178 (C.D. Cal 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  Where, as here, there exists no genuine issue of material fact regarding defendant's waiver of its right to arbitration, summary judgment is appropriate.  *See, e.g., Banc of America Securities LLC v. Independence Tube Corp.*, 2010 WL 1780321, at *7 (N.D. Ill. May 4, 2010).

### A.   This Court Should Decide The Waiver By Conduct Issue

#### 1.   Assuming The Parties Could Ever Contract To Delegate The Issue Of Waiver To The Arbitrator, They Did Not Do So Here

Both federal and state law grant the Court power to decide whether a party waived its right to arbitration.[3]  *Cox,* 533 F.3d at 1119-20*; In re Toyota Motor*

---

[3] Although the NDAs involve a network television program and clearly implicate interstate commerce, the arbitration provision itself contains a choice of law clause providing that California law governs the agreement.  There appears to be disagreement between the Ninth Circuit and the Supreme Court of California as to the effect of this choice of law language under state law contract principles.  *Compare Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205 (9th Cir. 1998) (use of such language does not represent an agreement of the parties to be bound by the California Arbitration Act ("CAA"), Cal. Civ. Proc. Code § 1280 et seq., rather than the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16) *with Cronus*

1   *Corp. Unintended Accel. Marketing, Sales Practices & Prod. Liab. Litig.*, 838 F.

2   Supp. 2d 967, 974-75 (C.D. Cal. 2012); Cal. Civ. Proc. Code § 1281.2(a);

3   *McMillin*, 68 Cal. App. 4th at 909.

4          Despite this rule, CBS claims that an arbitrator should determine whether

5   CBS's conduct in this Court waived CBS's right to arbitrate, on the theory that the

6   parties agreed in the NDAs to delegate that issue to the arbitrator.  The NDA

7   arbitration provision reads as follows:

8           [A]ny and all disputes or controversies arising under this
        Agreement, or any of its terms, any effort by any party to

9           enforce, interpret, construe, rescind, terminate or annul this
        Agreement, or any provision thereof, shall be resolved by

10          binding arbitration.

11  SUF ¶ 1.

12         Assuming that the law ever allows parties to assign the issue of waiver by

13  litigation conduct to an arbitrator, this language manifestly does not do so.  At a

14  minimum, the cases require that the parties have "clear[ly] and unmistakabl[y]"

15  delegated such authority to the arbitrator.  *First Options*, 514 U.S. at 944; *Ehleiter*,

16  482 F.3d at 221; *Marie*, 402 F.3d at 15; *Gilbert Street*, 174 Cal. App. 4th at 1190-

17  92. The burden to show a clear and unmistakable delegation is "onerous."  *Ehleiter*,

18  482 F.3d at 221; *see Marie*, 402 F.3d at 15 ("The standard . . . is meant to be a high

19  one, and the normal presumptions in favor of arbitration do not apply.").  Indeed,

20  the opinions considering whether a contract "clearly and unmistakably" delegates

21  waiver by conduct to an arbitrator demand that the contract actually use the term

22  "waiver" or a term like it.  In *Ehleiter,* the Third Circuit rejected a claimed

23  delegation because

24  

25  *Investment, Inc. v. Concierge Services*, 35 Cal. 4th 376, 387 (2005) (similar choice of law clause "incorporates California's rules of arbitration into the contract.").

26  In this case, however, the arbitration provision expressly references California Code of Civil Procedure 1281.8, part of the CAA.  SUF ¶ 3.  Because the result in this

27  Motion is the same under federal or state law, this Court need not determine whether the incorporation of part of the CAA evinces the parties' intent to

28  incorporate all of it.

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*There are no references to waiver of arbitration in this or any other provision of the Agreement.* We cannot interpret the Agreement's silence regarding who decides the waiver issue here "as giving the arbitrators that power, for doing so ... [would] force [an] unwilling part[y] to arbitrate a matter [he] reasonably would have thought a judge, not an arbitrator, would decide." Litigants would expect the court, not an arbitrator, to decide the question of waiver based on litigation conduct, and the Agreement here does not manifest a contrary intent.

482 F.3d at 222 (quoting *First Options*, 514 U.S. at 945) (emphasis added).

The First Circuit in *Marie*, a case like the one at bar involving an employment contract, identified the same problem with the language of the arbitration provision at issue there:

*There are no references to waiver or similar terms anywhere in the arbitration agreement.* Neither party should be forced to arbitrate the issue of waiver by conduct without a clearer indication in the agreement that they have agreed to do so. The issue of who would decide such a question is an "arcane" one that employees are unlikely to have considered unless clearly spelled out by the employer.

402 F.3d at 15; *see Chen v. Dillard's, Inc.,* 2012 WL 4127958, at *1-*2 (D. Kan. Sept. 19, 2012) (language essentially identical to provision in the case at bar does not clearly and unmistakably delegate waiver).

Neither the NDA's arbitration provision nor anything else in the NDA expressly references post-contractual waiver of the right to arbitration through litigation conduct as an issue assigned to the arbitrator. SUF ¶ 2. As the *Marie* court observed, in employment contracts like the NDAs, which were drafted by CBS's production company, the waiver issue was most "unlikely to have [been] considered unless clearly spelled out by the employer." *Marie,* 402 F.3d at 15. Here it was obviously *not* spelled out, and the NDAs fail to delegate the waiver issue.

## 2. In Any Event, The Parties Cannot Make A Contract Limiting The Court's Inherent Power To Control The Proceedings Before It

Neither the United States Supreme Court nor the California courts appear to

MEMORANDUM ISO MOTION FOR PARTIAL SUMMARY JUDGMENT

1   have specifically addressed whether private parties have the ability to delegate the

2   question of waiver through litigation conduct to an arbitrator.  Nevertheless, other

3   courts, including the Ninth Circuit, have done so, and those cases strongly suggest

4   that private parties cannot contract away the power of the Court to decide waiver

5   for two reasons:

6       *First*, the authorizing federal and state statutes assign the question of

7   arbitration waiver to the Court, not the arbitrator.  In both *Marie* and *Ehleiter*, the

8   Court of Appeals expressed skepticism that any private agreement could limit a

9   federal court's authority to determine whether a party waived its right to arbitrate

10  through litigation conduct.  As the court in *Marie* explained, "[w]e are not sure that

11  waiver can, in all cases, be contracted away from the court's competence at all.

12  The 'default' language in Section 3 of the FAA, which as we noted includes waiver,

13  perhaps gives courts a duty, which cannot be shifted by contract between the

14  parties, to determine whether waiver has occurred."  *Marie*, 402 F.3d at 14 n.10; *see*

15  *Ehleiter,* 482 F.3d at 221 n.13 ("We share the First Circuit's concern about the

16  enforceability of arbitration agreements that expressly authorize the arbitrator to

17  resolve claims of waiver based on litigation conduct.").

18      The language of the FAA to which the First and Third Circuits refer requires

19  a district court to stay trial of the action pending arbitration "providing the applicant

20  for the stay *is not in default* in proceeding with such arbitration."  9 U.S.C. § 3

21  (emphasis added).  The parallel language of the CAA contains an even more

22  express direction to courts regarding waiver: "[T] he court shall order the petitioner

23  and the respondent to arbitrate the controversy . . . unless *it* determines that (a) *[t]he*

24  *right to compel arbitration has been waived by the petitioner.*"  Cal. Civ. Proc.

25  Code § 1281.2(a) (emphasis added).  Moreover, the California Court of Appeal has

26  also expressed skepticism that parties can simply contract away a court's section

27  1281.2(a) authority.  *McMillin,* 68 Cal. App. 4th at 908-09.

28      *Second*, the conduct at issue occurred in litigation before *this Court*.

- 11 -

1    Delegation of the issue of waiver to the arbitrator would therefore improperly

2    constrain the power of the Court to control the proceedings before it.  In *Reid*

3    *Burton Construction, Inc. v. Carpenters District Council*, 535 F.2d 598 (10th Cir.

4    1976), the leading case on this issue, the plaintiff signatory to a collective

5    bargaining agreement ("CBA") filed a damage claim in federal court against the

6    defendant and other unions, based on strike-related conduct in alleged violation of

7    the CBA, which contained a mandatory arbitration provision.  *Id.* at 599-600.

8         In a later trial memorandum, the plaintiff raised the question of whether the

9    union defendants "were estopped from claiming any right of arbitration on the basis

10   of certain equitable principles (e.g., repudiation, laches, waiver) because of their

11   dilatory pleading practices before the district court." *Id.* at 602.  The district court

12   decided that the question had been delegated to the arbitrator by the CBA.  *Id.*

13        The Tenth Circuit disagreed, explaining:

14             Courts must . . . maintain judicial control of their own
               proceedings.  *Such power, we assert, is broad enough to*
15             *include a court's determination of the validity of equitable*
               *defenses arising out of the action of parties before the court.*
16             To hold otherwise would unnecessarily hamper a court's
               control of its proceedings.
17
               . . . .
18
               [E]ven had the parties . . . intended [to delegate these
19             questions to an arbitration], we would conclude that such an
               agreement would clearly exceed the proper subject matter of a
20             collective bargaining agreement and *would not be enforceable*
               *in court*; *it would be improper for the prospective parties of a*
21             *lawsuit to attempt by contract to bind the exercise of a court's*
               *inherent judicial function.*
22

23   *Id.* at 603-604 (emphasis added).

24        The Ninth Circuit adopted *Reid Burton* in *California Trucking*, 679 F.2d at

25   1283.  The Ninth Circuit explained the rule as follows: "even if the litigants agreed

26   to refer the question of such repudiation to arbitration, jurisdiction would still be

27   proper only in [the] district court because the parties' prerogative to contract could

28   not encompass the power to limit directly the exercise of a court's inherent judicial

- 12 -

1  function." *Id.*  Although *Reid Burton* and *California Trucking* are actions arising

2  under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, their

3  general reasoning has not been confined to labor cases.  *See State Farm Mut. Auto.*

4  *Ins. Co. v. George Hyman Const. Co.*, 715 N.E.2d 749, 757 (Ill. App. Ct. 1999)

5  ("The parties cannot, by agreement, frustrate the inherent power of a court to bind

6  litigants to their former actions."); *Republic Ins. Co. v. PAICO Receivables, LLC,*

7  383 F.3d 341, 348 (5th Cir. 2004) ("The inclusion of a 'no [arbitration] waiver'

8  clause in a contract does not eliminate the district court's inherent power to control

9  its docket.").

10  Moreover, in almost all the above cases, the issue of the Court's power to

11  control proceedings before it arose in the context of *the defendant's* potential

12  waiver.  The concern over controlling the parties' conduct before the Court

13  increases exponentially where, as here, *the plaintiff* (1) ignores a mandatory

14  arbitration provision and files a lawsuit in federal court; (2) effectively attempts to

15  win the lawsuit with an expedited temporary restraining order; (3) loses; and

16  (4) flees the judicial forum, suddenly insisting that the arbitration agreement whose

17  very existence it originally failed to mention now shields it from the district court's

18  judgment.  As the Supreme Court of California has cautioned, "[t]he courtroom

19  may not be used as a convenient vestibule to the arbitration hall so as to allow a

20  party to create his own unique structure combining litigation and arbitration."

21  *Christensen v. Dewor Developments*, 33 Cal. 3d 778, 784 (1983) (citation and

22  quotation marks omitted).  The question of whether CBS waived its right to

23  arbitrate is for the Court.

24  **B.    CBS Waived Its Right To Arbitrate**

25  State law determines whether a party has waived the right to arbitrate.

26  *Quevedo v. Macy's, Inc.,* 798 F. Supp. 2d 1122, 1129 (C.D. Cal. 2011).  Generally,

27  the determination of waiver is a question of fact, but "[w]hen . . . the facts are

28  undisputed and only one inference may reasonably be drawn, the issue is one of

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

law."  *Saint Agnes Medical Ctr. v. PacifiCare of California,* 31 Cal. 4th 1187, 1196 (2003).

In California, "no single test delineates the nature of the conduct that will constitute a waiver of arbitration."  *Saint Agnes,* 31 Cal. 4th at 1195.  Although both plaintiffs and defendants can waive arbitration through litigation conduct, "the difference [between them] is significant" where the plaintiff chooses to initiate a lawsuit rather than arbitrate.  *Christensen*, 33 Cal. 3d at 782.  "A party who brings suit over a dispute which he has agreed to arbitrate has acted in violation of his agreement, while a defendant in such a suit has done no legal wrong."  *Id.*

Over the years, California courts have identified six factors that are relevant in assessing waiver claims:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Saint Agnes,* 31 Cal. 4th at 1196 (citation and quotation marks omitted).[4]

The sixth *Saint Agnes* factor, prejudice, "is critical in waiver determinations."  *Id.* at 1203.  Prejudice occurs whenever the party resisting arbitration causes the other party to lose the benefits of arbitration: "avoidance of the courtroom with its attendant delays, costs, and publicity, and the avoidance of procedures associated with the formal litigation of causes."  *Christensen*, 33 Cal. 3d at 783.  In this case,

---

[4] Ninth Circuit courts use a similar three-factor test:  (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration.  *El Dorado Irr. Dist. v. Traylor Bros., Inc.*, 2006 WL 902561, at *6 (E.D. Cal. Apr. 5, 2006) (citation and quotation marks omitted). "Both the federal and state cases . . . emphasize the same basic elements for consideration."  *Id.*

CBS's conduct was inconsistent with the right to arbitrate and prejudiced Plaintiffs for the following four reasons:

### 1. CBS Intentionally Bypassed The California Arbitration Act's "Safe Harbor" For Plaintiffs Seeking Provisional Injunctive Remedies In Court And Filed A Complaint Inconsistent With Any Right To Arbitrate

CBS has previously suggested that its conduct was not inconsistent with asserting an arbitration right because CBS sought a temporary restraining order against Plaintiffs merely as a provisional remedy designed to protect its arbitral remedy.

CBS's argument is meritless because the record shows it deliberately bypassed compliance with the statutory scheme designed to protect parties who seek a provisional remedy in aid of arbitration.  CBS knew of these statutory requirements for preserving arbitration and agreed to abide by them because CBS's own NDA included an express reference to the pertinent statute in the arbitration provision:

> The parties hereto agree that, notwithstanding the [arbitration] provisions of this paragraph, Producer shall have a right to injunctive or other equitable relief *as provided for in California Code of Civil Procedure 1281.8 or other relevant laws.*

SUF ¶ 3 (emphasis added).

Section 1281.8(b) provides that a party to an arbitration agreement may seek an injunction in court, "but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief." The statute mandates that if application for injunction is accompanied by a complaint, "the application shall also be accompanied by a statement *stating whether the party is or is not reserving the party's right to arbitration*."  *Id.* (emphasis added).  The statute further provides that the request for provisional relief will not waive any right of arbitration "*if*, at the same time . . ., the applicant also presents to the court an application that all other proceedings in the action be

1    stayed pending . . . arbitration." *Id.* § 1281.8(d) (emphasis added).

2        In this case, despite the NDAs' express reference to section 1281.8, CBS's

3    TRO application was *not* made "upon the ground that [an arbitration award] . . .

4    may be rendered ineffectual without provisional relief." Cal. Civ. Proc. Code §

5    1281.8; SUF ¶ 32. Nor did CBS accompany its TRO application with a statement

6    stating whether CBS was or was not reserving its right to arbitration. *Id.* Nor did

7    CBS present to the Court an application that all other proceedings in the action be

8    stayed pending arbitration. *Id.* Nor did CBS even mention the words "arbitration"

9    or "arbitrate" in the CBS Complaint or in any other filing with the Court. *Id.*

10       In fact, CBS's styling of its complaint made it abundantly clear that CBS had

11   no intention of arbitrating. CBS sought injunctive relief "without acknowledging

12   the arbitrability of its claims. [CBS]'s complaint is wholly silent as to the parties'

13   arbitration agreement. It requests actual damages. It demands a jury trial."

14   *Riverside Publishing,* 829 F. Supp. 2d at 1020; *see* SUF ¶¶ 8, 19, 21. These acts

15   alone are sufficient to demonstrate actions inconsistent with an arbitration right.

16   *Riverside Publishing,* 829 F. Supp. 2d at 1020.

17       Moreover, CBS also requested a permanent, as well as a preliminary

18   injunction. SUF ¶ 9. *See Writers Guild,* 274 Cal. App. 2d at 374 ("[the plaintiff]'s

19   court action sought a permanent, as well as a preliminary, injunction, a demand at

20   odds with its present suggestion that it sought only provisional relief from the

21   court"). And CBS sought its injunction from the Court despite the fact that it

22   believed it could seek such provisional relief from the arbitrator, as evidenced by

23   CBS's current Demand for Arbitration which expressly seeks a preliminary

24   injunction from the arbitrator. SUF ¶ 55. *See Writers Guild*, 274 Cal. App. 2d at

25   374 (where provisional injunctive relief would have been available from the

26   arbitrator, a plaintiff's seeking provisional relief from the court is inconsistent with

27   its arbitration right).

28       As if all this were not enough, the record discloses both CBS's keen

- 16 -

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

1  appreciation of section 1281.8's requirements, as well as CBS's decision to bypass

2  those requirements.  As noted above, on May 15, 2012, CBS's counsel sent the

3  following email to counsel for Plaintiffs and ABC:

> 4  Folks, I want to alert you that we are going to be filing an amended complaint this afternoon. *We will be dropping all*
> 5  *damage claims against the individual defendants in this proceeding, and will be seeking only injunctive relief as to*
> 6  *them, under CCP 1281.8.*

7  SUF ¶ 26 (emphasis added).  There can be no dispute of fact that CBS had read

8  section 1281.8 at this point.  Yet CBS did *not* file an amended complaint that

9  afternoon, or the next day, or the next month.  In fact, CBS never made *any* effort

10  whatsoever to comply with the requirements of section 1281.8.  Nor did CBS drop

11  its damage claims against Plaintiffs in this matter until two-and-a-half months after

12  CBS's counsel sent his May 15 email, after CBS lost its fight to enjoin Plaintiffs,

13  and just after CBS had read Plaintiffs' and ABC's motion to dismiss.  SUF ¶ 56.

14  Short of an affirmative declaration, "we have decided not to arbitrate!" it would be

15  difficult to imagine a clearer abandonment of the right to arbitrate than this case

16  presents.

17  ### 2.   CBS's Forum Shopping Prejudiced Plaintiffs And Waived Its Right To Arbitrate

18

19  Not only did CBS act inconsistently with a right to arbitrate, but its blatant

20  forum shopping prejudiced Plaintiffs, and waived CBS's arbitration right as a

21  matter of law.

22  *Writers Guild* is directly on point.  In *Writers Guild,* the plaintiff, a labor

23  union, had negotiated a collective bargaining agreement with the defendant film

24  producers (the "Basic Agreement").  274 Cal. App. 2d at 369.  The Basic

25  Agreement provided that arbitration would resolve any disputes about the meaning

26  of the agreement's terms.  *Id.*  A dispute arose between two writers, members of the

27  plaintiff, and defendants over the correct interpretation of the agreement.  *Id.*

28  Plaintiff and the two writers filed suit against the defendants, seeking

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

1    rescission of the writer's new contract with the defendants. *Id.* In the complaint,

2    the plaintiff and the writers described at length their interpretation of the Basic

3    Agreement with regard to the rights at issue in the contract between the writers and

4    the defendant. *Id.* The plaintiff and the writers also asked for "'a preliminary and

5    permanent injunction'" preventing the defendants from exercising any of the rights

6    reserved to the writers in the Basic Agreement. *Id.*

7        Three weeks after filing suit, Plaintiff and the writers filed an application for

8    preliminary injunction in California Superior Court. *Id.* After a hearing, the court

9    denied their application. *Id.* The plaintiff then demanded that the defendants

10   arbitrate. *Id.* When the defendants refused, the plaintiff moved to compel

11   arbitration. *Id.* at 370. The superior court denied the motion, finding that the

12   plaintiff had waived the right to arbitrate through its litigation conduct. *Id.*

13       The Court of Appeal affirmed. The appellate panel noted that "[a]fter [the

14   plaintiff] obtained a ruling on the preliminary injunction, the case no longer

15   consisted merely of statements of the parties' contentions but contained the added

16   element of a preliminary ruling on a critical aspect of the litigation." *Id.* at 373.

17   The Court explained:

18           To permit a party to proceed with an action until an
             unfavorable decision on a motion is rendered and then allow it
19           to resort, against the wishes of the adversary, to arbitration,
             where a better result is hoped for, *would cause an*
20           *unnecessary waste of time and effort to all concerned and is a*
             *fundamentally unfair procedure which should not be*
21           *encouraged.* In sporting terminology, [CBS] having been
             called out on strikes in the first inning, is not entitled to move
22           the ball game across the street and start over again.

23   *Id.* at 375 (emphasis added) (citation and quotation marks omitted).

24       The court in *ConWest* reached the same conclusion. In *ConWest,* the

25   plaintiff, an adult entertainment novelty business, filed a complaint and amended

26   complaint, claiming among other things copyright and trademark infringement.

27   2007 WL 1288349, at *1. The claims in the complaints were subject to a

28   mandatory arbitration agreement. *Id.* Within days of filing its first complaint, the

                              - 18 -        MEMORANDUM ISO MOTION FOR
                                            PARTIAL SUMMARY JUDGMENT

1   plaintiff moved for a preliminary injunction seeking to prevent the defendant from

2   further using its copyrights and registered marks.  *Id.*

3         The district court denied the plaintiff's motion for a preliminary injunction.

4   *Id.* at *2.  The next day, the plaintiff informed the defendant it would seek

5   arbitration.  Despite the relatively short two-and-a-half month delay between the

6   time the plaintiff filed its federal court complaint and the time it sought arbitration

7   (the same delay as in the instant case), the court in *ConWest,* like the court in

8   *Writers Guild*, held that the plaintiff's forum shopping had prejudiced the defendant

9   and waived the plaintiff's right to arbitrate:

10          What may be fairly inferred from the context of [the
            plaintiff's] repeated refusals to arbitrate, and then seeking

11          arbitration after an unfavorable ruling on its preliminary
            injunction motion, is that [the plaintiff] is seeking an

12          alternative forum sensing an adverse ruling in this one.  Such
            use of arbitration as a method of forum shopping would be

13          prejudicial to [the defendant].

14  *Id.* at *5.

15        The same analysis controls the prejudice inquiry in *Riverside Publishing*.  In

16  *Riverside Publishing*, the plaintiff filed suit for breach of a settlement agreement

17  that had resolved a prior claim of copyright infringement.  829 F. Supp. 2d at 1018-

18  19.  The settlement agreement contained a mandatory arbitration provision.  *Id.*

19  The plaintiff also filed an application for a temporary restraining order and

20  preliminary injunction to enjoin publication of allegedly infringing materials by the

21  defendant.  *Id.*  The district court denied the application, finding that the plaintiff

22  was unlikely to succeed on the merits of its claims.  *Id.*

23        Five days later, the plaintiff made an arbitration demand repeating the only

24  two claims in its complaint.  *Id.* at 1019.  As in this case, the arbitration demand

25  sought the same injunctive relief the plaintiff had failed to win in federal court.  *Id.*

26  The parties then filed competing motions regarding the arbitrability of the dispute.

27  *Id.*

28        The district court ruled that the plaintiff had waived arbitration, even though

- 19 -

1   the plaintiff had caused only two weeks of delay. *Id.* at 1022.

> The court finds additional support for [the defendant's] claim of prejudice arising from strong evidence that [the plaintiff] seeks arbitration primarily to avoid litigating before a court that has already taken a dim view of the merits of its claims. As noted, [the plaintiff] made no mention of its right to arbitrate until after the court's order denying injunctive relief. [The plaintiff]'s attempt to abruptly exit the litigation it chose to enter deprives [the defendant] of the fruits of its success in this litigation.  This is another form of prejudice.

7   *Id.*; *see also Adolph v. Coastal Auto Sales, Inc.* 184 Cal. App. 4th 1443, 1451

8   (2010) (where the defendant delayed raising arbitration for six months and "[i]t was

9   only until defendant's second demurrer was overruled that it . . . request[ed] . . . that

10  it litigate . . . in another forum to which all appearances it hopes that it will limit its

11  litigation risk and expense," the defendant waived its arbitration right) (citations

12  and quotation marks omitted); *Riverside Publishing*, 829 F. Supp. 2d at 1022

13  (courts "tak[e] a dim view of litigants who seek arbitration after an unfavorable

14  result in litigation") (citing cases); *McConnell v. Merrill Lynch, Pierce, Fenner &

15  Smith, Inc.*, 105 Cal. App. 3d 946, 951 (1980) ("Partial or piecemeal litigation of

16  issues in dispute, through pretrial proceedings, may in many instances justify a

17  finding of waiver[;]" a party may not "test[] the water before taking the swim" and

18  "[i]f it's not to [its] liking . . . go elsewhere.").

19      In short, the relevant authorities describe forum shopping of the type in

20  which CBS engaged as prejudicial, warranting a finding of waiver.

### 3.    CBS Sought To Arbitrate After Important Intervening Steps Had Occurred With Regard To Trade Secret Discovery, Again Prejudicing Plaintiffs

23      The Magistrate Judge's determination that CBS had only one more chance to

24  properly identify its supposed *Big Brother* "trade secrets" before permanently

25  losing the right to take discovery on those trade secrets, SUF ¶ 46, represents an

26  important "intervening step[]" in the litigation, supporting a waiver finding. *Saint

27  Agnes,* 31 Cal. 4th at 1196.

- 20 -

1    CBS began its original lawsuit against Plaintiffs and ABC by seeking
2    voluminous expedited discovery, including expedited trade secret discovery.  *See*
3    SUF ¶¶ 22, 28, 35, 39.  California Code of Civil Procedure section 2019.210
4    requires a plaintiff to identify the trade secrets at issue "with reasonable
5    particularity" before discovery on misappropriation, or any claim "factually
6    dependent" on the misappropriation allegation, can begin.  *Advanced Modular*
7    *Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 834-35 (2005).
8        CBS attempted to identify its supposed *Big Brother* "trade secrets" in the
9    CBS Complaint and in a May 15, 2012 letter.  *See* SUF ¶¶ 8, 28.  Neither disclosure
10   was remotely adequate under the governing case law.  On May 5, 2012, this Court
11   declined to order expedited discovery, noting that "the scope of the trade secret
12   discovery will be driven in significant part by the adequacy of CBS's disclosures."
13   SUF ¶ 27.  The Court directed the parties to meet-and-confer, and take any
14   remaining discovery disputes before the Magistrate Judge.  *Id.*
15       The parties met and conferred. Plaintiffs and ABC requested a proper trade
16   secret disclosure pursuant to section 2019.210.  On May 31, 2012, CBS provided its
17   second supplement to its trade secret disclosure.  SUF ¶ 28.  The disclosure was
18   again completely defective.
19       In the parties' joint discovery stipulation filed on June 13, 2012, Plaintiffs
20   and ABC requested that the Magistrate Judge place CBS on notice that if it once
21   again failed to properly identify the so-called "trade secrets" at issue the Magistrate
22   Judge would bar CBS from filing any further disclosures, depriving CBS of the
23   right to take trade secret discovery and effectively disposing of its trade secret
24   claim.  SUF ¶ 36.
25       In his June 26, 2012 discovery order, the Magistrate Judge granted this
26   request, cautioning CBS that it had failed to meet the requirements of section
27   2019.210, and that it "may wish to sharpen its trade secret disclosure now that it has
28   the benefit of the District Court's Order.  However, *CBS's next attempt must be its*

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

1    *last*." SUF ¶ 46 (emphasis added).

2         The significance of this intervening step cannot be overestimated.  The

3    Magistrate Judge determined that CBS had several times failed to identify its

4    alleged trade secrets, and that one more failure would result in the loss of its right to

5    take discovery on its supposed trade secret claims.  As CBS had already made

6    multiple efforts to find some kind of *Big Brother* trade secret and failed, the

7    Magistrate Judge's June 26, 2012 Order confronted CBS with the very real

8    possibility of losing its trade secret claims against Plaintiffs altogether, since both

9    this Court and the Magistrate Judge had expressed serious skepticism about the

10   existence of CBS's trade secrets, strongly suggesting that CBS would be unable to

11   take discovery in the litigation.

12        In an effort to escape its perilous position, CBS fled the federal forum for

13   arbitration.  However, forcing Plaintiffs to relitigate the section 2019.210 trade

14   secret issues from scratch in arbitration duplicates Plaintiffs' expenses, requires yet

15   another forum to learn the inner workings of reality television, wastes the time and

16   effort the parties have already expended on the matter, and deprives Plaintiffs of

17   their superior litigation position.  It is thus highly prejudicial, and weighs heavily in

18   favor of a waiver finding.

19        **4.    CBS's Conduct Prejudiced Plaintiffs By Denying Them The
              Efficiencies Of Arbitration**

20

21        CBS's behavior also prejudiced Plaintiffs by depriving them of the benefits

22   of arbitration—in particular the avoidance of litigation's costs, procedures, and

23   attendant publicity.  *Christensen,* 33 Cal. 3d at 783.

24        CBS filed an extensive application for a temporary restraining order.  SUF ¶

25   32.  Indeed, CBS's TRO application contained much of the same material that

26   would be included in a summary judgment motion and fully joined the merits of the

27   issues.  *See ConWest*, 2007 WL 1288349, at *6 (comparing TRO papers to

28   summary judgment papers and expressing concern over duplication of expenses)

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

1    Moreover, when Plaintiffs and ABC informed CBS pursuant to Local Rule

2    7.3 that they intended to file a motion to dismiss the CBS Complaint, and explained

3    the basis for the motion, CBS did not communicate an intention to immediately

4    dismiss or amend the complaint.  Consequently, Plaintiffs pointlessly expended

5    resources preparing and filing a highly substantive motion to dismiss, further

6    revealing their legal strategy to CBS.  SUF ¶ 48.  Only *after* Plaintiffs had filed and

7    served the motion to dismiss did CBS amend its Complaint, dropping Plaintiffs

8    from the federal lawsuit and seeking for the first time to arbitrate with them.  SUF

9    ¶¶ 51-52.  It is difficult to interpret this conduct as anything but an effort to drive up

10   litigation costs while learning as much as possible about Plaintiffs' legal arguments

11   in opposition to CBS's claims.  *See Guess?, Inc. v. Superior* Court, 79 Cal. App.

12   4th 553, 558 (2000) (where the defendant's three-and-a-half month delay in

13   invoking arbitration exposed the plaintiff to substantial expense that could have

14   been avoided through timely assertion of the defendant's arbitration right, and

15   permitted the defendant to obtain information about some of the plaintiff's trial

16   tactics, the plaintiff was prejudiced by losing the efficiencies of arbitration,

17   mandating a finding of waiver); *Christensen*, 33. Cal. 3d at 783-84 ("For a party to

18   file a lawsuit in order to discover [the] opponent's theories . . . tends to defeat the

19   expectations of the parties, in addition to imposing unnecessary and inappropriate

20   burdens upon already congested court calendars.  Such procedural gamesmanship

21   provides ample support for the . . . conclusion that plaintiffs failed their action in

22   bad faith, and by doing so waived their right to arbitrate.").

23       Finally, it is a matter of public record that CBS fought at least part of this

24   litigation in the press.  It released three widely covered press statements claiming

25   Plaintiffs had stolen from their former employer, thereby depriving Plaintiffs of one

26   of arbitration's central benefits—the avoidance of unwanted publicity.  *Christensen*,

27   33. Cal. 3d at 783; *see Delaware Coalition for Open Government v. Strine*, --- F.

28   Supp. 2d ----, 2012 WL 3744718, at *7 (D. Del. Aug. 30 2012) ("The chief

- 23 -

advantage of arbitration is the ability to resolve disputes without aspects often associated with the legal system: procedural delay and cost of discovery, the adversarial relationship of the parties, and publicity of the dispute. *As the product of private agreement between the parties, historically, arbitrations have been conducted outside the public view."*) (emphasis added) (citations omitted).

In sum, CBS chose the federal forum and the undisputed facts show CBS intended to litigate in the federal forum—until CBS believed it would lose in the federal forum. Then CBS chose to leave the federal forum as fast as it could. Choice is not without consequence. This Court should find that CBS has waived its right to arbitrate as a matter of law and should require CBS to remain in the forum in which it originally chose to pursue this matter.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request partial summary judgment of Claim I in Plaintiffs' favor.

DATED:  December 14, 2012          Munger, Tolles & Olson LLP

GLENN D. POMERANTZ
JONATHAN E. ALTMAN
CAROLYN HOECKER LUEDTKE


By:      */s/ Glenn D. Pomerantz*
          GLENN D. POMERANTZ

Attorneys for Plaintiffs
Kenny Rosen, Corie Henson, and Michael O'Sullivan

Early Sullivan Gizer Wright & McRae LLP

DEVIN A. MCRAE


By:          */s/ Devin A. McRae*
          DEVIN A. MCRAE

Attorneys For Plaintiffs
Kenny Rosen, Corie Henson, and Michael O'Sullivan

MEMORANDUM ISO MOTION FOR
                                                PARTIAL SUMMARY JUDGMENT