1   GLENN D. POMERANTZ (State Bar No. 112503)
    Glenn.Pomerantz@mto.com
2   JONATHAN E. ALTMAN (State Bar No. 170607)
    Jonathan.Altman@mto.com
3   CAROLYN HOECKER LUEDTKE (State Bar No. 207976)
    Carolyn.Luedtke@mto.com
4   JENNIFER A. JONES (State Bar No. 281480)
    Jennifer.Jones@mto.com
5   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue
6   Thirty-Fifth Floor
    Los Angeles, CA  90071-1560
7   Telephone:   (213) 683-9100
    Facsimile:    (213) 687-3702
8
    DEVIN A. MCRAE (State Bar No. 223239)
9   dmcrae@earlysullivan.com
    EARLY SULLIVAN WRIGHT GIZER & McRAE LLP
10  6420 Wilshire Blvd., 17th Floor
    Los Angeles, California 90048
11  Telephone:   (323) 301-4660
    Facsimile:    (323) 301-4676
12
    Attorneys for Plaintiffs
13  KENNY ROSEN, CORIE HENSON, AND MICHAEL
    O'SULLIVAN
14

15              UNITED STATES DISTRICT COURT

16             CENTRAL DISTRICT OF CALIFORNIA

17                   WESTERN DIVISION

18

19  Kenny Rosen, Corie Henson, and       CASE NO. CV12-09751 GAF (JEMx)
    Michael O'Sullivan,
20                                        **PLAINTIFFS' OPPOSITION TO
                        Plaintiffs,       MOTION TO DISMISS**
21
             vs.                          Hearing
22                                        Date:        January 28, 2013
    CBS Broadcasting Inc.,                Time:        9:30 a.m.
23                                        Place:       Roybal, Ctrm. 740
                        Defendant.        Judge:       Hon. Gary A. Feess
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................ 1

II.   FACTS ALLEGED IN THE COMPLAINT ................................. 3

III.  ARGUMENT ............................................................................ 5

   A. This Court Should Decide The Question Of Waiver By Prior
      Litigation Conduct ......................................................... 6

        1. The NDAs Do Not Clearly And Unmistakably Delegate The
           Question Of Waiver By Prior Litigation Conduct To The
           Arbitrator ................................................................. 6

        2. CBS's Authorities Further Confirm That This Court Should
           Decide The Litigation Waiver Question. ...................... 10

        3. CBS's Argument That Litigation Waiver Is Presumptively
           For The Arbitrator Contravenes Governing Ninth Circuit
           Authority .................................................................. 12

        4. CBS's Claim That The Court Must Delegate Waiver To The
           Arbitrator Because Only The Arbitrator Can Interpret The
           Contract Is Meritless ................................................. 13

   B. The Complaint States A Claim For A Declaration That CBS
      Waived Its Right To Arbitrate ....................................... 14

        1. CBS's Actions Were Seamlessly Inconsistent With An Intent
           To Arbitrate ............................................................. 15

        2. CBS's Blatant Forum Shopping After Losing Its TRO
           Prejudiced Plaintiffs .................................................. 18

        3. CBS's Blatant Forum Shopping After A Key Adverse
           Discovery Ruling Prejudiced Plaintiffs ........................ 20

        4. CBS's Arguments Concerning Discovery Are Beside The
           Point ....................................................................... 22

IV.  CONCLUSION ......................................................................... 24

# TABLE OF AUTHORITIES

**Page**

FEDERAL CASES

*ARC Ecology v. United States Dept. of the Air Force*,
    411 F.3d 1092 (9th Cir. 2005)..................................................................... 24

*AT&T Corp. v. Vision One Securities Systems*,
    914 F. Supp. 392 (S.D. Cal. 1995) .............................................................. 18

*Bell v. Cendant Corp.*,
    293 F.3d 563 (2d Cir. 2002)................................................................. 10, 13

*Bergman v. Spruce Peak Realty, LLC*,
    2012 WL 6212849 (D. Vt. Dec. 13, 2012) ............................................ 7, 10, 11

*California Trucking Ass'n v. Brotherhood of Teamsters & Auto Truck Drivers*,
    679 F.2d 1275 (9th Cir. 1981)..................................................................... 12

*Chen v. Dillard's, Inc.*,
    2012 WL 4127958 (D. Kan. Sept. 19, 2012) ........................................... 2, 8, 9

*ConWest Resources, Inc. v. Playtime Novelties, Inc.*,
    2007 WL 1288349 (N.D. Cal. May 1, 2007) .......................................... 3, 19, 20

*Cox v. Ocean View Hotel Corp.*,
    533 F.3d 1114 (9th Cir. 2008).............................................................. 1, 12, 13

*Ehleiter v. Grapetree Shores, Inc.*,
    482 F.3d 207 (3d Cir. 2007)............................................................... passim

*El Dorado Irr. Dist. v. Traylor Bros.*, Inc.,
    2006 WL 902561 (E.D. Cal. Apr. 5, 2006).................................................. 15

*First Options of Chicago v. Kaplan*,
    514 U.S. 938 (1995) ................................................................................. 1, 7

*Grigsby & Assoc., Inc. v. M Securities Inv.*,
    664 F.3d 1350 (11th Cir. 2011)................................................................... 13

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) .............................................................................. 12, 13

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and
    Products Liability Litig.*,
    838 F. Supp. 2d 967 (C.D. Cal. 2012) ................................................... 13, 17

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Johnson v. Riverside Healthcare Sys., LP*,
534 F.3d 1116 (9th Cir. 2008)................................................................. 14

*Marie v. Allied Home Mortg. Corp.*,
402 F.3d 1 (1st Cir. 2005).......................................................... passim

*Menna v. Plymouth Rock Assur. Corp.*,
987 A.2d 458 (D.C. Cir. 2010) ............................................................... 12

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011)..................................................................... 8

*National American Ins. Co. v. Transamerica Occidental Life Ins. Co.*,
328 F.3d 462 (8th Cir. 2003).......................................................... 11, 12

*Parler v. KFC Corp.*,
529 F. Supp. 2d 1009 (D. Minn. 2008) ........................................ 11, 12, 13

*Qualcomm Inc. v. Nokia Corp.*,
466 F.3d 1366 (Fed. Cir. 2006)............................................................. 12

*Quevedo v. Macy's, Inc.*,
798 F. Supp. 2d 1122 (C.D. Cal. 2011) ................................................ 15

*Republic of Ecuador v. Chevron Corp.*,
638 F.3d 384 (2d Cir. 2011)............................................................ 10, 11

*Riverside Publ'g Co. v. Mercer Publ'g LLC*,
829 F. Supp. 2d 1017 (W.D. Wash. 2011) ................................... passim

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
655 F.3d 1039 (9th Cir. 2011)................................................................ 17

**STATE CASES**

*Adolph v. Coastal Auto Sales, Inc.*
184 Cal. App. 4th 1443 (2010) ......................................................... 3, 20

*Advanced Modular Sputtering, Inc. v. Superior Court*,
132 Cal. App. 4th 826 (2005) ............................................................... 21

*Christensen v. Dewor Developments*,
33 Cal. 3d 778 (1983) ...................................................... 15, 23, 24

*Guess?, Inc. v. Superior Court*,
79 Cal. App. 4th 553 (2000) ................................................................. 23

MEMORANDUM ISO MOTION FOR
PARTIAL SUMMARY JUDGMENT

1

2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3

*Mid-Century Ins. Co. v. Bash*,

4
    211 Cal. App. 3d 431 (1989).................................................................. 17

5
*Saint Agnes Medical Ctr. v. PacifiCare of California*,
    31 Cal. 4th 1187 (2003) .......................................................... 15, 16, 21

6

7
*Thorup v. Dean Witter Reynolds, Inc.*,
    180 Cal. App. 3d 228 (1986)................................................................... 7

8
*Writers Guild of America, West, Inc. v. Screen Gems, Inc.*,
    274 Cal. App. 2d 367 (1969).............................................................. 3, 19

9

10
**STATUTES AND RULES**

11
Cal. Civ. Proc. Code § 1281.8................................................................. 1, 2,

12
Cal. Civ. Proc. Code § 1281.8(b) ............................................................. 16

13
Cal. Civ. Proc. Code § 1281.8 (d) ............................................................ 17

14
Cal. Civ. Proc. Code § 2019.210.............................................................. 21

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- iv -

## I.   **INTRODUCTION**

Defendant CBS Broadcasting, Inc. ("CBS") asks this Court to dismiss the Complaint because Plaintiffs Kenny Rosen, Corie Henson, and Michael O'Sullivan (collectively "Plaintiffs") supposedly fail to state a claim that CBS waived its right to arbitrate.  CBS makes this assertion even though the Complaint alleges that CBS:

1) filed trade secret, contract, and fiduciary duty claims against Plaintiffs seeking liquidated damages in breach of a mandatory arbitration agreement covering those claims, Compl. ¶¶ 24-29, 65;

2) breached the arbitration agreement again by demanding a temporary restraining order without complying with California Code of Civil Procedure 1281.8, as required by the agreement, Compl. ¶ 65;

3) fled federal court for arbitration only after this Court denied the request for a TRO, finding that CBS was unlikely to succeed on the merits of *any* of its claims, and after the Magistrate Judge denied CBS's expedited discovery requests, cautioning CBS that it was about to lose the right to take *any* discovery on its arbitrable claims against Plaintiffs.  Compl. ¶¶ 43, 46, 47-50.

Not only do these facts state a claim for declaratory relief that CBS waived its right to arbitrate—*they establish waiver as a matter of law*.[1]  First, notwithstanding CBS's protestations to the contrary, the law presumes that this Court, not an arbitrator, will decide whether CBS waived its right to arbitrate through prior litigation conduct.  *Cox v. Ocean View Hotel Corp.,* 533 F.3d 1114, 1120 (9th Cir. 2008).  Nor does any language in the relevant arbitration agreement "clearly and unmistakably" rebut that presumption.  *See Marie v. Allied Home Mortg. Corp.,* 402 F.3d 1, 12–14 (1st Cir. 2005) (absent use of the term "waiver" or some other similar term, an arbitration provision does not clearly and unmistakably

---

[1] Indeed, Plaintiffs filed a motion for partial summary judgment on Claim I of their Complaint, seeking a declaration that CBS waived its right to arbitrate, on December 14, 2012.  Dkt. 10.

- 1 -

1    delegate the specific issue of litigation waiver to the arbitrator); *Ehleiter v.*

2    *Grapetree Shores, Inc.*, 482 F.3d 207, 217–19 (3d Cir. 2007) (same); *Chen v.*

3    *Dillard's, Inc.,* 2012 WL 4127958, at *1-3 & n.1 (D. Kan. Sept. 19, 2012)

4    (provision nearly identical to arbitration provision in the case at bar, which also

5    incorporated American Arbitration Association ("AAA") rules, does not clearly and

6    unmistakably delegate specific issue of litigation waiver).

7         Second, the Complaint sets forth sufficient facts to state claims for

8    declaratory relief on the waiver issue several times over because it alleges conduct

9    inconsistent with CBS's right to arbitrate and prejudial to Plaintiffs.  Although CBS

10   erroneously urges that the arbitration provision in Plaintiffs' non-disclosure

11   agreements ("NDAs") authorized CBS to seek injunctive relief in court, even CBS

12   does not argue that the NDAs allowed CBS to request liquidated damages and a

13   jury trial for its arbitrable claims in court.  *See Riverside Publ'g Co. v. Mercer*

14   *Publ'g LLC,* 829 F. Supp. 2d 1017, 1020 (W.D. Wash. 2011) (claim for damages

15   and a demand for jury trial sufficient in and of themselves to show conduct

16   inconsistent with the right to arbitrate).  Moreover, CBS never even mentioned the

17   *existence* of the arbitration agreement to the Court, despite the NDAs' incorporation

18   of California Code of Civil Procedure § 1281.8.  CBS's Request for Judicial Notice

19   in Support of Motion to Dismiss ("RJN") Ex. 1 (2007 Rosen NDA) at CBS00027.

20   Section 1281.8 requires a party that wishes to preserve its right to arbitrate while

21   seeking provisional injunctive relief to so inform the Court in writing—and to state

22   affirmatively that its arbitral remedy might be "rendered ineffectual without

23   provisional relief."  Cal. Code Civ. Proc. § 1281.8.  CBS took neither of these steps.

24   Such behavior is hardly consistent with the right to arbitrate.

25        As for prejudice, CBS's motion to dismiss completely ignores the allegations

26   in the Complaint showing that CBS engaged in egregious forum shopping.  CBS

27   obviously had no interest in arbitrating any of its claims in this case until it suffered

28   an adverse ruling from this Court on its TRO application, and an adverse ruling

- 2 -

1   from the Magistrate Judge imperiling CBS's ability to take trade secret and related

2   discovery against Plaintiffs.  Only then did CBS decide that the better course of

3   valor lay in arbitration.  The cases are crystal clear that this kind of opportunistic

4   behavior prejudices the opposing party and results in arbitration waiver.  *Writers

5   Guild of America, West, Inc. v. Screen Gems, Inc.,* 274 Cal. App. 2d 367, 373-74

6   (1969); *ConWest Resources, Inc. v. Playtime Novelties, Inc.,* 2007 WL 1288349, at

7   *5 (N.D. Cal. May 1, 2007); *Riverside Publishing,* 829 F. Supp. 2d at 1020.

8          Put simply, the law does not permit CBS to both litigate *and* arbitrate,

9   depending on how it happens to be doing in either forum at any given time.  "[T]he

10   courtroom may not be used as a convenient vestibule to the arbitration hall so as to

11   allow a party to create his own unique structure combining litigation and

12   arbitration."  *Adolph v. Coastal Auto Sales, Inc.* 184 Cal. App. 4th 1443, 1452

13   (2010) (quotation marks omitted); *see Writers Guild*, 274 Cal. App. 2d at 375 ("[the

14   plaintiff] having been called out on strikes in the first inning, is not entitled to move

15   the ball game across the street and start over again.").  The motion to dismiss

16   should be denied.

17   II.     **FACTS ALLEGED IN THE COMPLAINT**

18          On May 10, 2012, CBS filed a complaint (the "CBS Complaint") in the

19   United States District Court for the Central District of California against several

20   corporate entities, including ABC (collectively "ABC"), and against Plaintiffs

21   Henson, Rosen, and O'Sullivan.  CBS alleged that Plaintiffs had misappropriated

22   supposed *Big Brother* "trade secrets" and breached the NDAs they had signed while

23   working at *Big Brother*.  Compl. ¶¶ 24, 26; RJN Ex. 6.  CBS further claimed that

24   Plaintiffs were about to violate CBS's copyright license in *Big Brother*.  In its

25   Prayer For Relief, CBS sought preliminary and permanent injunctions to prevent

26   alleged disclosure of CBS's confidential information and trade secrets and to

27   prevent production of *The Glass House*.  Compl. ¶ 25; RJN Ex. 6 at 32-33.  Based

28   on provisions in the NDAs, CBS also alleged that Plaintiffs each owed CBS

- 3 -

1    $500,000 in liquidated damages for each of the alleged disclosures.  *Id.*

2          The same NDAs invoked by CBS in its Complaint contain mandatory

3    arbitration provisions requiring arbitration of "any and all disputes arising under

4    this Agreement, or any of its terms."  Compl. ¶ 29; RJN Ex. 1 (2007 Rosen NDA)

5    at CBS00027.

6          Four days after filing its federal court complaint, CBS filed a lengthy *ex parte*

7    application in court seeking written discovery responses and the production of

8    voluminous responsive documents.  CBS sought 10 depositions between May 24

9    and May 31—all the depositions to which CBS would be entitled under the Federal

10   Rules in a normal six-month discovery period.  Compl. ¶ 32; RJN Ex. 8 at 12.  On

11   May 25, this Court denied CBS's *ex parte* application, observing that it had

12   "serious questions regarding the scope of the discovery proposed by CBS."  Compl.

13   ¶ 33; RJN Ex. 9 at 1.

14         On May 31, 2012, CBS filed another *ex parte* application, this time with the

15   Magistrate Judge.  CBS requested three days of depositions and a literally

16   impossible document production schedule, with productions due before the

17   opposition was even filed.  Compl. ¶¶ 34-36; RJN Ex. 10 at 3-4.  The Magistrate

18   Judge denied CBS's application, but ordered ABC and Plaintiffs to comply with the

19   discovery schedule they had negotiated before the conference—a limited document

20   production and a one-day deposition of Mr. Rosen, to take place on a Sunday.

21   Compl. ¶ 37; RJN Ex. 12.  On Sunday, June 3, 2012, CBS deposed Mr. Rosen.

22   Although the Magistrate Judge had ordered that the deposition be "limited to

23   copyright issues," RJN Ex. 12 at 2, CBS spent much of the deposition questioning

24   Mr. Rosen about the alleged disclosure of trade secrets and confidential

25   information.  Compl. ¶ 38; RJN Ex. 14 at 3-5.

26         On June 7, 2012, CBS filed its *ex parte* application for a temporary

27   restraining order.  Compl. ¶ 39; RJN Ex. 13.  On June 21, 2012, the Court issued a

28   detailed order denying CBS's *ex parte* application for a TRO.  The Court found that

1  CBS had failed to demonstrate substantial similarity between *Big Brother* and *The*
2  *Glass House*, as required to state a copyright claim.  Compl. ¶ 43 & Ex. A.  As for
3  the trade secrets claim, "the Court entertain[ed] serious doubts as to CBS's ability
4  to demonstrate either [1] that the purported trade secrets qualify for protection; or
5  [2] that Defendants are actively misappropriating any such trade secrets."  Compl.
6  ¶ 44.

7         Meanwhile, CBS, seeking a huge document production and another day of
8  deposition from Mr. Rosen, had filed yet another discovery motion with the
9  Magistrate Judge.  Compl. ¶ 40; RJN Ex. 14.  ABC and Plaintiffs opposed this
10 motion on the grounds that CBS had failed to sufficiently identify a trade secret
11 about which discovery could be conducted.  RJN Ex. 14 at 5-6.  On June 26, 2012,
12 the Magistrate Judge agreed, finding that CBS was "not entitled to trade secret
13 discovery . . . until it identifies its alleged trade secrets with 'reasonable
14 particularity.'"  RJN Ex. 17 at 2.  The Magistrate Judge cautioned CBS that it "may
15 wish to sharpen its trade secret disclosure now that it has the benefit of the District
16 Court's Order.  *However, CBS's next attempt must be its last*."  Compl. ¶ 46
17 (emphasis in Complaint); RJN Ex. 17 at 3.

18        On July 2, 2012, Plaintiffs and ABC filed a motion to dismiss all of CBS's
19 claims with prejudice.  Compl. ¶ 47.  After reviewing the motion to dismiss and
20 obtaining an extension to respond, CBS filed a first amended complaint ("FAC") on
21 July 30, 2012.  Compl. ¶ 48; RJN Ex. 7.  The FAC dropped all claims against
22 Plaintiffs in this case.  *Id.*  The same day, July 30, 2012, CBS for the first time
23 demanded arbitration with Plaintiffs.  Compl. ¶ 49.  The claims in CBS's
24 Arbitration Demand (the "Demand") are nearly identical to those CBS litigated
25 against Plaintiffs before this Court.  *Id.* ¶ 50; RJN Ex. 2.

26 **III.   ARGUMENT**

27        CBS simply ignores the Complaint's key allegation: that CBS engaged in
28 outrageous forum shopping by fleeing federal court after losing its application for a

- 5 -

TRO and after losing a key discovery motion before Magistrate Judge McDermott. The cases consistently hold such behavior in and of itself prejudicial, justifying a finding of arbitration waiver.  Likewise, CBS's baseless claim that the NDAs somehow permitted CBS to act the way it did without waiving its right to arbitrate ignores both the language of the NDAs and governing state law.  Cal. Civ. Proc. Code § 1281.8.

Nor do CBS's preliminary arguments that the arbitrator should decide whether CBS waived its right to arbitrate have merit, as set forth directly below. Particularly here, where the conduct at issue occurred during litigation *between the same parties before this very Court*, and where the NDAs do not clearly and unmistakably assign the specific issue of waiver by litigation conduct to the arbitrator, no reason in law or logic exists to transfer the matter from this Court.

**A.**   This Court Should Decide The Question Of Waiver By Prior Litigation Conduct

**1.**   **The NDAs Do Not Clearly And Unmistakably Delegate The Question Of Waiver By Prior Litigation Conduct To The Arbitrator**

CBS concedes that "the usual presumption is that so-called 'questions of arbitrability' are for the Court, not the arbitrator, to decide," and that whether a party waived its right to arbitrate by its prior litigation conduct is a question of arbitrability.  Mem. at 8-9.  CBS argues, however, that where the parties have "[c]learly [a]nd [u]nmistakably" delegated "questions of arbitrability" to the arbitrator, the parties' agreement governs.  Mem. at 8-9 (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83-85 (2002)).  According to CBS, because the NDA's arbitration provision has broad language and incorporates the AAA Commercial Rules, the parties delegated the issue of waiver by prior litigation conduct to the arbitrator.

CBS is mistaken.  The standard to show that language clearly and unmistakably delegates such a waiver is an "onerous" one.  *Ehleiter,* 482 F.3d at

1   221; *see Marie,* 402 F.3d at 15 ("The standard . . . is meant to be a high one, and the

2   normal presumptions in favor of arbitration do not apply.").  Moreover, language

3   that clearly and unmistakably delegates ordinary questions of arbitrability will not

4   delegate the specific issue of arbitration waiver through prior litigation conduct

5   ("litigation waiver"), in part because "there are important policy reasons why a

6   court and not an arbitrator should decide waiver issues, at least where the

7   waiver . . . is due to litigation-related activity." *Marie,* 402 F.3d at 13.  Primarily,

8   where the waiver issue comes before the same court wherein the prior litigation

9   conduct occurred, and involves the same parties, then the court has the authority to

10   "control the course of proceedings before it and to correct abuses of those

11   proceedings." *Id.*; *see Bergman v. Spruce Peak Realty, LLC,* 2012 WL 6212849, at

12   *5 (D. Vt. Dec. 13, 2012) (same); *Thorup v. Dean Witter Reynolds, Inc.,* 180 Cal.

13   App. 3d 228, 234 (1986) ("Because such a [litigation] waiver is based upon conduct

14   related to the judicial process, the existence of waiver is a question for the courts to

15   decide.") (citations omitted)).  *See also* n.3 below.

16        In addition, "[a] party often might not focus upon [the question of

17   arbitrability] or upon the significance of having arbitrators decide the scope of their

18   own powers." *First Options of Chicago v. Kaplan,* 514 U.S. 938, 945 (1995).  As

19   the *Marie* court observed, "[t]he issue of who . . . decide[s] [the litigation waiver]

20   question is an 'arcane' one." 402 F.3d at 15.  Particularly where, as here, the

21   employer presents a pre-prepared NDA to the employees for their signature, the

22   "employees are unlikely to have considered [the waiver by conduct issue] unless

23   clearly spelled out by the employer." *Id.*

24        Indeed, the lack of any discernible authority finding an arbitration provision

25   sufficiently clear and unmistakable to overcome the presumption that courts decide

26   the litigation waiver question further confirms judicial reluctance to delegate

27

28

PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS

1    waiver.[2]  Nor is the instant case an exception—in part because to clearly and

2    unmistakably delegate the specific issue of litigation waiver, the law requires that

3    the arbitration provision actually use the term "waiver" or a similar term leaving no

4    doubt concerning the parties intent to delegate that issue.  *Marie,* 402 F.3d at 15;

5    *Ehleiter*, 482 F.3d at 222.

6        The NDA provision fails this test.  It reads:

7           [A]ny and all disputes or controversies arising under this
            Agreement, or any of its terms, any effort by any party to
8           enforce, interpret, construe, rescind, terminate or annul this
            Agreement, or any provision thereof, shall be resolved by
9           binding arbitration.

10   RJN Ex. 1 (2007 Rosen NDA) at CBS00027; *see id.* (incorporating AAA

11   Commercial Rules).

12       The NDA contains no specific reference to waiver or any similar term.

13   Nothing in the language quoted above clearly and unmistakably demonstrates the

14   parties' intention "to have an arbitrator decide procedural questions of arbitrability

15   that arise only *after* the parties have bypassed a gateway determination of

16   substantive arbitrability by the arbitrator and actively litigated the underlying

17   dispute in court."  *Ehleiter,* 482 F.3d at 222 (emphasis added).  The very best one

18   can say of the provision is that it is ambiguous with regard to whether the parties

19   meant to include those questions.  By definition, ambiguity is not "clear and

20   unmistakable."

21       *Chen* appears to be the case with an arbitration provision most closely

22   resembling the one at issue in the case at bar, and is therefore instructive.  In *Chen,*

23   the agreement under consideration read:

24           Any dispute concerning this Agreement--the way it was

25   _____

26   [2]*Momot v. Mastro,* 652 F.3d 982 (9th Cir. 2011), the sole case on which CBS relies
     to support its claim that the language of the arbitration provision delegates waiver
27   by litigation conduct, Mem. at 10-11, concerns itself only with certain language in
     the contract that delegates general issues of arbitrability to the arbitrator.  It has
28   nothing to do with waiver by litigation conduct, and never mentions the word
     waiver.

PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS

1    formed, its applicability, meaning, enforceability, or any
2    claim that all or part of this Agreement is void or voidable--is
     subject to arbitration under the Agreement.

3    2012 WL 4127958, at *1.  The *Chen* agreement also incorporated the AAA

4    Employment Arbitration Rules and Mediation Procedures, which, like the

5    Commercial Rules incorporated in the NDAs, permit an arbitrator to determine his

6    own jurisdiction.  *Id.* at *2 n.1; *see* RJN Ex. 5 (AAA Employment Arbitration Rules

7    and Mediation Procedures) Rule 6a.

8          The district court in *Chen* agreed that the provision delegated questions of

9    arbitrability and "clearly and unmistakably provide[d] the arbitrator with authority

10   to decide whether the . . . [Agreements] are unconscionable and unenforceable."

11   2012 WL 4127958, at *2 & n.1.  *But* the court went on to observe:

12         Plaintiff's final challenge is that defendant waived its right to
           arbitration.  Specifically, plaintiff argues that defendant
13         waived its right to arbitrate because . . . defendant filed a
           motion to dismiss and served limited discovery while the
14         original case was in state court.  *The delegation provision
           does not clearly and unmistakably cover this dispute.  So the
15         court must resolve the issue before compelling arbitration.*

16   *Id.* at *3 (emphasis added).

17         The *Chen* court's observation that despite delegating general questions of

18   arbitrability, the provision did not "clearly and unmistakably cover" litigation

19   waiver comports with the leading cases on the issue.  In *Ehleiter,* the Third Circuit

20   concluded that an arbitration provision failed to delegate litigation waiver, even

21   though the provision clearly and unmistakably indicated "that the parties intended

22   to have an arbitrator determine the gateway question of whether the underlying

23   substantive dispute between them [was] arbitrable."  482 F.3d at 222.  The Third

24   Circuit rejected the claimed delegation of litigation waiver because

25         *[t]here are no references to waiver of arbitration in this or
           any other provision of the Agreement.*  We cannot interpret
26         the Agreement's silence regarding who decides the waiver
           issue here "as giving the arbitrators that power, for doing
27         so . . . [would] force [an] unwilling part[y] to arbitrate a
           matter [he] reasonably would have thought a judge, not an
28         arbitrator, would decide."  Litigants would expect the court,

- 9 -                                    PLAINTIFFS' OPPOSITION
                                         TO MOTION TO DISMISS

1
2
not an arbitrator, to decide the question of waiver based on litigation conduct, and the Agreement here does not manifest a contrary intent.

3   *Id.* (quoting *First Options*, 514 U.S. at 945 (1995) (emphasis added); *accord Marie,*

4   402 F.3d at 15.

5           The same is true here.  The NDAs lack a clear and unmistakable delegation

6   of litigation waiver, either through actual use of the word "waiver" or some other

7   similar term giving unmistakable notice concerning the parties' intention with

8   regard to waiver.  Therefore, the NDAs cannot strip this Court of its authority to

9   decide the question.

10                    **2.      CBS's Authorities Further Confirm That This Court Should
                      Decide The Litigation Waiver Question.**

11

12          The cases on which CBS relies are distinguishable and further demonstrate

13   why this Court should decide the litigation waiver question.  For example, CBS

14   repeatedly cites *Republic of Ecuador v. Chevron Corp.,* 638 F.3d 384, 391-92 (2d

15   Cir. 2011), for the proposition that an arbitrator must decide whether litigation

16   waiver occurred.  Mem. at 2, 10.  As a preliminary matter, the Second Circuit has

17   for many years held that the *court*, not an arbitrator, should decide questions

18   concerning litigation waiver in order "to prevent forum shopping."  *Bell v. Cendant

19   Corp.,* 293 F.3d 563, 569 (2d Cir. 2002).

20          Nor is *Republic of Ecuador* to the contrary, as *Bergman,* 2012 WL 6212849,

21   makes clear.  In *Bergman*, the district court initially held "that by incorporating the

22   Commercial Rules of the American Arbitration Association in the arbitration clause

23   . . . the parties intended the arbitrator to rule on issues of arbitrability."  *Id.* at *4.

24          The plaintiffs in *Bergman*, however, also argued that the defendants had

25   waived their right to arbitrate through their litigation conduct in the district court.

26   Despite finding that incorporation of the AAA rules delegated "questions of

27   arbitrability" to the arbitrator, the court declined to find delegation with regard to

28   the specific question of litigation waiver.  Instead, the court explained that, *"[i]n*

PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS

1   *this Circuit, a waiver of arbitration by participation in litigation is a matter for*

2   *judicial determination."  Id.* at \*5 (emphasis added).

3         Like CBS, the plaintiffs in *Bergman* had relied heavily on *Republic of*

4   *Ecuador.*  In an analysis directly applicable here, the *Bergman* court distinguished

5   *Republic of Ecuador* on two grounds:

6         One, of significance in *Republic of Ecuador* was the argument
          that the defendant's conduct in agreeing to litigate in Ecuador
7         had the effect of undermining the arbitration agreement itself,
          rather than merely barring [the plaintiff] from proceeding to
8         arbitration. *Two, the parties and the relief sought in the two
          proceedings were different . . . .  By contrast, here the same
9         plaintiffs and the same defendants are jockeying for position
          on the same issues.*

10

11  *Id.* at \*5 (emphasis added).

12        In the instant case, as in *Bergman*, the question is not the validity of either the

13  NDA or the arbitration provision, but rather whether CBS can proceed in arbitration

14  against these particular Plaintiffs in this particular matter after having aggressively

15  litigated the same issues in this Court.  Therefore, litigation waiver remains for this

16  Court to decide even under *Republic of Ecuador.*

17        CBS also relies on *National American Ins. Co. v. Transamerica Occidental*

18  *Life Ins. Co.*, 328 F.3d 462 (8th Cir. 2003), which stated that an arbitration panel

19  should consider whether the plaintiff "waived the right to arbitrate because [the

20  plaintiff] pursued litigation in the Oklahoma courts."  *Id.* at 466; Mem. at 10.

21        *National American* is likewise readily distinguishable from the instant case.

22  As explained in *Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1013 (D. Minn. 2008),

23  although the Eighth Circuit made a passing reference to "courts" in *National*

24  *American*,

25        the Eighth Circuit simply did not have before it an allegation
          that [the plaintiff] had waived its right to arbitrate *through the*
26        *pursuit of litigation*-that is, through conduct committed before
          a *judge.*  Rather, the Eighth Circuit had before it an allegation
27        that [the plaintiff] had waived its right to arbitrate *through its
          actions in an earlier arbitration*-that is, through conduct
28        committed before an *arbitrator.*

- 11 -

PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS

> In other words, the Eighth Circuit described the waiver claim as being based on something that [the plaintiff] did *not* do in the course of *arbitration,* rather than on something that [the plaintiff] *did* do in the course of *litigation.*

*Id.* (examining facts of *National American* closely and concluding that it does not disturb governing Eighth Circuit authority holding that litigation waiver is a matter for the court to decide); *see Ehleiter,* 482 F.3d at 220 (distinguishing *National American* on same grounds and holding the same).[3]

### 3.   CBS's Argument That Litigation Waiver Is Presumptively For The Arbitrator Contravenes Governing Ninth Circuit Authority

Relying on *Howsam,* 537 U.S. at 84-85, CBS completely contradicts itself by suggesting that litigation waiver is not actually a "question of arbitrability" at all, but a "procedural question" distinct from other questions of arbitrability that is presumptively for the arbitrator to decide. *Compare* Mem. at 8-9 ("claim of waiver by prior litigation conduct" is a "type of arbitrability issue" presumptively "for the Court, not the arbitrator, to decide") *with* Mem. at 13 ("waiver is a 'procedural question' distinct from other questions of arbitrability and 'presumptively *not* for

---

[3] *Qualcomm Inc. v. Nokia Corp.,* 466 F.3d 1366 (Fed. Cir. 2006), Mem. at 2, 10, is not a litigation waiver case at all.  The District of Columbia Court of Appeals alone of the authorities cited by CBS does seem to regard litigation waiver as a question presumptively for the arbitrator, *Menna v. Plymouth Rock Assur. Corp.,* 987 A.2d 458, 465 (D.C. Cir. 2010), but that position contradicts the Ninth Circuit's holding in *Cox,* 533 F.3d at 1120.

In addition, a number of courts, including the Ninth Circuit, have suggested that private parties simply *cannot* delegate the issue of litigation waiver to an arbitrator. *See Marie,* 402 F.3d at 14 n.10 ("[w]e are not sure that waiver can, in all cases, be contracted away from the court's competence at all"); *Ehleiter,* 482 F.3d at 221 n.13 ("We share the First Circuit's concern about the enforceability of arbitration agreements that expressly authorize the arbitrator to resolve claims of waiver based on litigation conduct."); *California Trucking Ass'n v. Brotherhood of Teamsters & Auto Truck Drivers,* 679 F.2d 1275, 1283 (9th Cir. 1981) ("even if the litigants agreed to refer the question of such repudiation to arbitration, jurisdiction would still be proper only in [the] district court because the parties' prerogative to contract could not encompass the power to limit directly the exercise of a court's inherent judicial function.").  The Court need not reach the issue in this case because, as discussed above, the NDAs do not "clearly and unmistakably" attempt to delegate waiver to the arbitrator.  For a more detailed discussion of the issue, *see* Plaintiffs' Motion For Summary Judgment, Dkt. 10, at 10-13.

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

the judge, but for an arbitrator to decide'" (quoting *Howsam,* 537 U.S. at 84-85)).

CBS was right the first time. The Ninth Circuit follows the vast majority of federal circuits in holding that the issue of litigation waiver is presumptively for the Court to decide. *Cox,* 533 F.3d at 1120.[4] *See In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*, 838 F. Supp. 2d 967, 974-75 (C.D. Cal. 2012) (explaining "the Ninth Circuit has applied *Howsam* in a manner consistent with the First, Third, Sixth, and Eleventh Circuits" by "decid[ing] that the Court, not the arbitrator, was required to decide the issue of waiver where the party resisting arbitration did so on the grounds of breach and conduct-based waiver") (citing *Cox*, 533 F.3d at 1120–21 & nn. 3–6).

In an effort to avoid the controlling force of *Cox,* as well as the overwhelming weight of authority, CBS next argues that *Cox* is irrelevant because in *Cox,* the Ninth Circuit "did not indicate whether the agreements at issue clearly and unmistakably delegated arbitrability to the arbitrator." Mem. at 15. This is a non-sequitur. Arguments regarding the delegation of litigation waiver are entirely irrelevant to the question of which decision maker is presumed to decide litigation waiver in the first instance. In this circuit, that decision maker is the Court. *Id.* Regardless, as described above, because the NDAs do *not* clearly and unmistakably delegate litigation waiver to the arbitrator, the question remains one for the Court to decide.

### 4. CBS's Claim That The Court Must Delegate Waiver To The Arbitrator Because Only The Arbitrator Can Interpret The Contract Is Meritless

Finally, CBS seems to argue that because "determining whether CBS allegedly waived its right to arbitrate by filing suit in this Court and requesting

---

[4] *Accord Grigsby & Assoc., Inc. v. M Securities Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011); *JPD, Inc. v. Chronimed Holdings,* Inc., 539 F.3d 388, 393–94 (6th Cir. 2008)*; Ehleiter*, 482 F.3d at 217–19; *Marie,* 402 F.3d at 12–14; *see also Parler,* 529 F. Supp. 2d at 1013 (holding Eighth Circuit follows same rule); *Bell*, 293 F.3d at 569 (litigation conduct based waiver always for court to decide).

1  injunctive relief . . . will turn on whether CBS's actions were consistent with [the
2  arbitration provision's restrictions on injunctive relief]," the decision-maker will
3  have to interpret the arbitration provision, and the provision only authorizes an
4  arbitrator to interpret it so the provision must delegate litigation waiver to the
5  arbitrator.  Mem. at 12-13.

6          CBS's argument is without merit.  Obviously, this Court must interpret the
7  NDA to determine whether the NDA "clearly and unmistakably" delegates the
8  decision on litigation waiver to the arbitrator.  If the NDA does not, the issue
9  remains for the Court.  If the issue remains for the Court, then the law obviously
10 invests the Court with the power necessary to decide the issue, including the power
11 to interpret the contract—something the Court has to do anyway in order to make
12 its threshold determination of who decides waiver.  Moreover, the notion that
13 CBS's tortured construction of the NDA's arbitration provision, which could only
14 apply in the unique circumstances of this case, shows a "clear and unmistakable"
15 delegation of litigation waiver finds no support in the case law or anywhere else.
16 This sort of contract interpretation only makes painfully apparent what is already
17 clear as day: this Court, not an arbitrator, decides whether CBS waived its right to
18 arbitrate.

19         **B.**     The Complaint States A Claim For A Declaration That CBS Waived
                      Its Right To Arbitrate
20
21         To defeat CBS's motion to dismiss, Plaintiffs need only set forth enough
22 facts to state a claim for litigation waiver that is facially plausible.  *Johnson v.*
23 *Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1123 (9th Cir. 2008).  As set forth in
24 detail below, this they have easily done.

25         State law controls whether a party has waived the right to arbitrate.  *Quevedo*
26 *v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1129 (C.D. Cal. 2011).  In California, "no
27 single test delineates the nature of the conduct that will constitute a waiver of
28 arbitration."  *Saint Agnes Medical Ctr. v. PacifiCare of California,* 31 Cal. 4th

PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS

1187, 1195 (2003).  Although both plaintiffs and defendants can waive arbitration through litigation conduct, "the difference [between them] is significant" where the plaintiff chooses to initiate a lawsuit rather than arbitrate.  *Christensen v. Dewor Developments*, 33 Cal. 3d 778, 782 (1983).  "A party who brings suit over a dispute which he has agreed to arbitrate has acted in violation of his agreement, while a defendant in such a suit has done no legal wrong."[5]  *Id.*

Over the years, California courts have identified six factors that are relevant in assessing waiver claims.  *Saint Agnes,* 31 Cal. 4th at 1196; *see* Mem. at 16 (setting forth factors).[6]  The sixth *Saint Agnes* factor, prejudice, "is critical in waiver determinations."  31 Cal. 4th at 1203.

In this case, CBS's actions in filing a federal action against Plaintiffs including arbitrable claims; its disregard of both the requirements of the NDA and governing California law in seeking a TRO in support of those arbitrable claims; and its blatant forum shopping after losing both the TRO and a key discovery motion, not only state a claim that CBS's conduct waived its right to arbitrate, but in fact constitute waiver as a matter of law.  This Court should deny CBS's motion to dismiss.

### 1.    CBS's Actions Were Seamlessly Inconsistent With An Intent To Arbitrate

The first *St. Agnes* factor, which also appears in the Ninth Circuit's

---

[5] CBS argues that "[n]ot once during the pendency of [the prior] action did Plaintiffs assert the argument that CBS either should be forced to proceed in arbitration against them, or alternatively, that CBS had waived its right to compel arbitration."  Mem. at 1.  It is difficult to know what CBS means: Plaintiffs assumed, based on CBS's conduct, that CBS had decided to forego arbitration. CBS also notes that Plaintiffs did not file their Complaint until four months after CBS filed its Demand. Mem. at 1, 7.  Again, CBS does not explain its point, but CBS knows perfectly well that the parties were attempting to settle during that period.

[6] Ninth Circuit courts use a similar three-factor test:  (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration.  *El Dorado Irr. Dist. v. Traylor Bros., Inc.*, 2006 WL 902561, at *6 (E.D. Cal. Apr. 5, 2006) (citation and quotation marks omitted).  "Both the federal and state cases . . . emphasize the same basic elements for consideration."  *Id.*

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

1   arbitration waiver test, is "whether the party's actions are inconsistent with the right

2   to arbitrate."  31 Cal. 4th at 1196; *El Dorado Irr. Dist.,* 2006 WL 902561, at *6.

3   CBS insists that seeking injunctive relief against Plaintiffs based in part on trade

4   secret and breach of contract claims covered by a mandatory arbitration provision

5   was not inconsistent with its right to arbitrate, because the NDAs "expressly

6   granted CBS 'the right to [seek] injunctive or other equitable relief as provided for

7   in California Code of Civil Procedure [§] 1281.8 or other relevant laws.'"  Mem. at

8   17 (quoting NDAs).

9        CBS's contention that it sought injunctive relief as authorized by the NDAs

10  and consistent with its right to arbitrate is totally meritless.  The NDAs authorized

11  CBS to obtain an injunction *pursuant to California Code of Civil Procedure section*

12  *1281.8*, which permits a party to seek provisional injunctive relief in order to

13  maintain the effectiveness of its arbitral remedy.  *See, e.g.,* RJN Ex. 1 (2007 Rosen

14  NDA) at CBS00027.  Section 1281.8 sets forth *exactly* the steps a party must take

15  to avoid waiving its right to arbitrate when it seeks such relief.  CBS took *none* of

16  these steps—not one.  Section 1281.8(b) provides that a party to an arbitration

17  agreement may seek an injunction in court, "but only upon the ground that the

18  award to which the applicant may be entitled may be rendered ineffectual without

19  provisional relief."  The statute mandates that if application for injunction is

20  accompanied by a complaint, "the application *shall also be accompanied by a*

21  *statement stating whether the party is or is not reserving the party's right to*

22  *arbitration*."  *Id.* (emphasis added).  The statute further provides that the request for

23  provisional relief will not waive any right of arbitration "*if,* at the same time . . ., the

24  applicant also presents to the court an application that all other proceedings in the

25  action be stayed pending . . . arbitration."  *Id.* § 1281.8(d) (emphasis added).

26       By failing to comply with *any* requirement of Section 1281.8, CBS breached

27  the NDA and ignored the governing statutory requirements to avoid arbitration

28

PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS

1    waiver.[7]  Compl. ¶ 65.  If this does not constitute conduct inconsistent with the right

2    to arbitrate, it is difficult to imagine what would.[8]

3            Additionally, as alleged in the Complaint, CBS's other behavior was also

4    inconsistent with its right to arbitrate.  Compl. ¶ 65.  CBS sought injunctive relief

5    "without acknowledging the arbitrability of its claims.  [CBS]'s complaint is wholly

6    silent as to the parties' arbitration agreement.  It requests actual damages.  It

7    demands a jury trial." *Riverside Publishing*, 829 F. Supp. 2d at 1020; *see* RJN Ex.

8    6.  This conduct alone is sufficient to demonstrate actions inconsistent with an

9    arbitration right.  *Riverside Publishing*, 829 F. Supp. 2d at 1020; *see also In re*

10   *Toyota*, 838 F. Supp. 2d at 979 ("By continuing to actively defend [its claims]

11   without a whisper of the intent to seek an order compelling arbitration, Toyota has

12   engaged in numerous acts that are inconsistent with the right to compel

13   arbitration.").

---

14   [7] The NDAs permit CBS to seek injunctive relief "as provided for in [Section

15   1281.8] or other relevant laws."  RJN Ex. 1 (2007 Rosen NDA) at CBS00027.
     CBS cites no "other relevant laws" supposedly guiding its attempt to seek

16   injunctive relief while preserving its right to arbitrate.  CBS does cite to the laws
     under which it sought an injunction.  Mem. at 6, 17 (citing, *inter alia*, the Copyright

17   Act and CUTSA as supporting its injunction).  However, even CBS does not claim
     that "relevant laws" refers to *any* law that authorizes an injunction, as opposed to

18   laws like Section 1281.8 that describe the actions a party may take to obtain
     equitable relief while preserving its right to arbitrate.  Obviously, reading the NDAs

19   to define "relevant laws" as *all* laws authorizing equitable relief renders the
     reference to section 1281.8 surplusage, violates the basic principle of *noscitur a*

20   *sociis*, and makes little sense.  *See Mid-Century Ins. Co. v. Bash*, 211 Cal. App. 3d
     431, 438 (1989) (words of a contract should not be interpreted to render them "mere

21   surplusage"); *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d
     1039, 1051 n.3 (9th Cir. 2011) ("the commonsense canon of *noscitur a sociis* . . .

22   counsels that a word is given more precise content by the neighboring words with
     which it is associated") (citation and quotation marks omitted).

23   [8] CBS also seems to argue that the actions it took in support of its motion for
     injunctive relief are neither inconsistent with the right to arbitrate nor prejudicial

24   because its motion for injunctive relief is somehow similar to a non-arbitrable
     claim.  *See* Mem. at 19-20 (citing case law about non-arbitrable claims as support

25   for its claim that discovery sought as part of its TRO was not prejudicial).  This
     argument is nonsensical.  Injunctive relief is a *remedy* for a claim, not a claim itself.

26   Moreover, CBS sought injunctive relief for its breach of contract and trade secret
     claims—both undeniably *arbitrable* claims.  The fact that the NDAs authorized

27   CBS to seek such relief under certain circumstances does not make those claims
     non-arbitrable, nor would the arbitrability of the claims affect the need to adhere to

28   Section 1281.8.

- 17 -

PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS

1    Although CBS concedes that it "initially included damages claims against the

2  [Plaintiffs]," and that doing so was inconsistent with its right to arbitrate, it insists

3  "that fact is ultimately irrelevant because, in order for those *particular* claims to

4  have effected a waiver, they must have *had specific prejudicial effects* on

5  Plaintiffs." Mem. at 17.

6    CBS misunderstands the law. The prejudice inquiry is separate from the

7  inquiry into whether a party took actions inconsistent with the right to arbitrate, and

8  nothing in the cases remotely suggests that an act inconsistent with arbitration only

9  "counts" in the waiver analysis if it specifically causes prejudice. Even *AT&T*

10  *Corp. v. Vision One Securities Systems,* 914 F. Supp. 392 (S.D. Cal. 1995), the case

11  on which CBS relies, Mem. at 17, makes this clear. In *Vision One,* one of the

12  plaintiffs' multiple claims was covered by a mandatory arbitration agreement. The

13  court in *Vision One* concluded that the filing of that claim in federal court "would

14  appear to be inconsistent with the knowledge of the right to compel arbitration." *Id.*

15  at 397. The court also noted, however, that "no action has occurred with respect to

16  this claim," and that to the extent expedited discovery related to the claim, the

17  defendants had suffered no prejudice. *Id.* In sum, the court in *Vision One* correctly

18  separated the question of whether filing the claim was inconsistent with arbitration

19  (yes) from the question of whether the plaintiff's conduct in pursuing the claim

20  prejudiced defendant.

21              **2.    CBS's Blatant Forum Shopping After Losing Its TRO**
                        **Prejudiced Plaintiffs**
22

23    CBS's motion simply ignores the main source of prejudice described in the

24  Complaint—*CBS's blatant forum shopping*. CBS suffered two significant defeats

25  in the prior litigation: it lost its application for a TRO, and the Magistrate Judge

26  effectively threatened to bar *any* further discovery on CBS's arbitrable claims

27  against Plaintiffs. Compl. ¶¶ 43, 46. Confronted by these rulings, CBS fled the

28  forum, apparently hoping for a fresh start in arbitration. Compl. ¶¶ 47-49.

PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS

1    Literally *every* analogous case that Plaintiffs have uncovered holds that

2    CBS's conduct constitutes prejudicial forum shopping and waives its right to

3    arbitrate.  *Writers Guild,* 274 Cal. App. 2d at 373-74; *ConWest,* 2007 WL 1288349,

4    at *5; *Riverside Publishing,* 829 F. Supp. 2d at 1020.

5    *Writers Guild* is directly on point.  In *Writers Guild,* the Plaintiff filed suit

6    against the defendants, seeking rescission of a contract with the defendants.  274

7    Cal. App. 2d at 369.  Three weeks after filing suit, the plaintiff filed an application

8    for preliminary injunction in California Superior Court.  *Id.*  After the court denied

9    its application, the plaintiff moved to compel arbitration pursuant to a controlling

10   mandatory arbitration agreement.  *Id.* at 370.  The Superior Court denied the

11   motion, finding that the plaintiff had waived the right to arbitrate through its

12   litigation conduct.  *Id.*

13   The Court of Appeal affirmed.  The appellate panel noted that "[a]fter [the

14   plaintiff] obtained a ruling on the preliminary injunction, the case no longer

15   consisted merely of statements of the parties' contentions but contained the added

16   element of a preliminary ruling on a critical aspect of the litigation."  *Id.* at 373.

17   The Court explained:

18   > To permit a party to proceed with an action until an
     > unfavorable decision on a motion is rendered and then allow it

19   > to resort, against the wishes of the adversary, to arbitration,
     > where a better result is hoped for, *would cause an*

20   > *unnecessary waste of time and effort to all concerned and is a*
     > *fundamentally unfair procedure which should not be*

21   > *encouraged.*  In sporting terminology, [CBS] having been
     > called out on strikes in the first inning, is not entitled to move

22   > the ball game across the street and start over again.

23   *Id.* at 375 (emphasis added) (citation and quotation marks omitted).

24   The court in *ConWest* reached the same conclusion under essentially identical

25   circumstances:

26   > What may be fairly inferred from the context of [the
     > plaintiff's] repeated refusals to arbitrate, and then seeking

27   > arbitration after an unfavorable ruling on its preliminary
     > injunction motion, is that [the plaintiff] is seeking an

28   > alternative forum sensing an adverse ruling in this one.  Such

- 19 -

use of arbitration as a method of forum shopping would be prejudicial to [the defendant].

2007 WL 1288349, at *5.

The same analysis controls the prejudice inquiry in *Riverside Publishing*:

> The court finds additional support for [the defendant's] claim of prejudice arising from strong evidence that [the plaintiff] seeks arbitration primarily to avoid litigating before a court that has already taken a dim view of the merits of its claims. As noted, [the plaintiff] made no mention of its right to arbitrate until after the court's order denying injunctive relief. [The plaintiff]'s attempt to abruptly exit the litigation it chose to enter deprives [the defendant] of the fruits of its success in this litigation.  This is another form of prejudice.

829 F. Supp. 2d at 1022; *see also Adolph,* 184 Cal. App. 4th at 1451 (where the defendant delayed raising arbitration for six months and "[i]t was only until defendant's second demurrer was overruled that it . . . request[ed] . . . that it litigate . . . in another forum to which all appearances it hopes that it will limit its litigation risk and expense," the defendant waived its arbitration right) (citations and quotation marks omitted); *Riverside Publishing*, 829 F. Supp. 2d at 1022 (courts "tak[e] a dim view of litigants who seek arbitration after an unfavorable result in litigation") (citing cases).

CBS is no exception to the rule.  Its forum shopping prejudiced Plaintiffs and fully supports Plaintiffs' request for a declaration of waiver.[9]

### 3. CBS's Blatant Forum Shopping After A Key Adverse Discovery Ruling Prejudiced Plaintiffs

CBS spends most of its motion to dismiss arguing that it obtained only limited discovery in this matter before retreating from federal court, and therefore Plaintiffs suffered no prejudice.  Mem. at 18-22.  CBS never explains *why* it obtained only limited discovery when it repeatedly demanded, on an expedited schedule, essentially *all* the discovery it could have obtained against Plaintiffs on

---

[9] For a more detailed discussion of the forum shopping cases, *see* Plaintiffs' Motion for Partial Summary Judgment, Dkt. 10, at 17-20.

- 20 -

1   all its arbitrable claims—including *every* document, email, or text in Plaintiffs'

2   possession related in any way shape or form to *The Glass House* and *Big Brother*,

3   as well as every deposition (10) to which it would have been entitled in an ordinary

4   federal case.  Compl. ¶¶ 32, 35-36, 40.

5          The reason is that CBS took important "intervening steps" in the litigation

6   that led to the imminent loss of its right to take discovery on its arbitrable trade

7   claims against Plaintiffs.  *See Saint Agnes,* 31 Cal. 4th at 1196 ("whether important

8   intervening steps" in litigation have taken place is a factor to consider in waiver

9   analysis).  From the beginning of CBS's litigation against ABC and Plaintiffs, this

10  Court had "serious questions regarding the scope of the discovery proposed by

11  CBS."  Compl. ¶ 33; RJN Ex. 9.  In particular, with regard to CBS's arbitrable trade

12  secret claim discovery, the Court observed that "the scope of the trade secret

13  discovery will be driven in significant part by the adequacy of CBS's disclosures

14  and whether those disclosures identify properly protectable trade secrets."  RJN Ex.

15  9 (requiring parties to meet and confer and bring further discovery disputes to the

16  Magistrate Judge).

17         When CBS brought its disputes over trade secret discovery to Magistrate

18  Judge McDermott, he eventually denied CBS's motion to compel, referring in his

19  order to California Code of Civil Procedure section 2019.210, which requires a

20  plaintiff to identify the trade secrets at issue "with reasonable particularity" before

21  discovery on misappropriation, *or any claim "factually dependent" on the*

22  *misappropriation allegation*, can begin.  *Advanced Modular Sputtering, Inc. v.*

23  *Superior Court*, 132 Cal. App. 4th 826, 834-35 (2005) (emphasis added); RJN Ex.

24  17 at 2-3.  The Magistrate Judge cautioned CBS that it "may wish to sharpen its

25  trade secret disclosure now that it has the benefit of the District Court's Order.

26  *However, CBS's next attempt must be its last.*"  Compl. ¶ 46 (quotation marks

27  omitted) (emphasis added in Complaint); RJN Ex. 17 at 3.  The Magistrate Judge's

28  warning thus jeopardized not only CBS's trade secret discovery, but its discovery

- 21 -

on its breach of contract and breach of fiduciary duty claims, which were factually
dependent on its trade secret claims.

*That* is why CBS obtained only limited discovery on its trade secret claims,
and that is also part of the reason CBS fled the federal forum—to escape the
discovery cliff on which it found itself perilously poised, and to obtain a discovery
do-over.  In light of these facts, CBS's claim that its discovery conduct in litigation
did not prejudice Plaintiffs rings hollow indeed.  Forcing Plaintiffs to relitigate the
section 2019.210 trade secret issues from scratch in arbitration duplicates Plaintiffs'
expenses, requires yet another forum to learn the inner workings of reality
television, wastes the substantial time and effort the parties have already expended
on the matter, and deprives Plaintiffs of their superior litigation position.  It is thus
highly prejudicial, and weighs heavily in favor of a waiver finding.

### 4.    CBS's Arguments Concerning Discovery Are Beside The Point

CBS's post-facto rationalizations concerning its extremely aggressive
discovery tactics in the prior litigation, as well as its arguments minimizing the
prejudice flowing from its conduct, are largely beside the point.  Plaintiffs are not
claiming that the *amount* of discovery produced in the prior litigation prejudiced
them.  Mem. at 20-21.  Plaintiffs suffered prejudice from CBS's forum shopping, as
alleged in the Complaint.  *See supra* section B(2).

Moreover, although CBS claims that it obtained nothing from Plaintiffs
during the previous litigation that it could not have obtained in discovery from
other corporate Defendants, Mem. at 18, in fact CBS's conduct forced Plaintiffs to
reveal their legal arguments prematurely.  When Plaintiffs and ABC informed CBS
pursuant to Local Rule 7.3 that they intended to file a motion to dismiss the CBS
Complaint, CBS did not communicate an intention to immediately dismiss or
amend the complaint.  Compl. ¶ 52.  Consequently, Plaintiffs pointlessly expended
resources preparing and filing a highly substantive motion to dismiss, which

PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS

Case 2:12-cv-09751-GAF-JEM   Document 18   Filed 01/07/13   Page 28 of 29   Page ID
#:1390

includes arguments on the breach of contract and fiduciary duty claims brought solely against Plaintiffs, and further reveals Plaintiffs' separate legal strategy to CBS. Compl. ¶ 69. Only *after* Plaintiffs had filed and served the motion to dismiss did CBS amend its Complaint, dropping Plaintiffs from the federal lawsuit and seeking for the first time to arbitrate with them. *See Guess?, Inc. v. Superior* Court, 79 Cal. App. 4th 553, 558 (2000) (where the defendant's three-and-a-half month delay in invoking arbitration exposed the plaintiff to substantial expense that could have been avoided through timely assertion of the defendant's arbitration right, and permitted the defendant to obtain information about some of the plaintiff's trial tactics, the plaintiff was prejudiced by losing the efficiencies of arbitration, mandating a finding of waiver). *Christensen*, 33 Cal. 3d at 783-84 ("For a party to file a lawsuit in order to discover [the] opponent's theories . . . tends to defeat the expectations of the parties, in addition to imposing unnecessary and inappropriate burdens upon already congested court calendars. Such procedural gamesmanship provides ample support for the . . . conclusion that plaintiffs failed their action in bad faith, and by doing so waived their right to arbitrate.").[10]

---

[10] CBS also claims that Plaintiffs produced no discovery in the prior litigation and that any discovery obtained from the other defendants in that action was produced "voluntarily." In fact, Plaintiff Rosen sat for a day of deposition on Sunday, June 3, 2012. CBS specifically refers to Mr. Rosen's testimony to support its claims against Plaintiffs in its Demand. Compl. ¶ 51; RJN Ex. 2. Moreover, anyone on the telephonic conference with Magistrate Judge McDermott would have quickly perceived that obedience to his directive was not voluntary. Likewise, CBS's arguments that it only asked questions concerning its copyright claim at Mr. Rosen's deposition, Mem. at 21-22 & n.12, are disingenuous, to say the least. In any event, the Complaint alleges that CBS asked questions concerning its arbitrable trade secret claims, and the inference may be fairly drawn that Mr. Rosen answered them, which in fact the parties know that he did. Compl. ¶ 38; RJN Ex. 14 at 3-5.

PLAINTIFFS' OPPOSITION
TO MOTION TO DISMISS

1    Finally, it is a matter of public record that CBS fought at least part of this

2    litigation in the press.  Compl. ¶¶ 23; 42; 45; 53.  It released three widely covered

3    press statements claiming Plaintiffs had stolen from their former employer, and

4    gave its cease and desist letter to the press, thereby depriving Plaintiffs of one of

5    arbitration's central benefits—the avoidance of unwanted publicity.  *Id*;

6    *Christensen*, 33 Cal. 3d at 783.

7    In sum, CBS can only prevail on its motion to dismiss by showing "that

8    [Plaintiffs] can prove no set of facts in support of the claim which would entitle

9    [them] to relief."  *ARC Ecology v. United States Dept. of the Air Force*, 411 F.3d

10    1092, 1096 (9th Cir. 2005).  CBS has not come close to shouldering its burden.  To

11    the contrary, for the reasons discussed above, Claim I of the Complaint states a

12    claim for declaratory relief against CBS, based on CBS's waiver of its right to

13    arbitrate by its conduct before this Court.  CBS's motion to dismiss should be

14    denied.

15    **IV.   CONCLUSION**

16    For the foregoing reasons, Plaintiffs respectfully request that this Court deny

17    CBS's motion to dismiss.

18    DATED:  January 7, 2013          Munger, Tolles & Olson LLP

19

20                                         By:      */s/ Glenn D. Pomerantz*
                                                GLENN D. POMERANTZ
21
                                         Attorneys for Plaintiffs, Kenny Rosen, Corie
22                                       Henson, and Michael O'Sullivan

23                                       Early Sullivan Wright Gizer & McRae LLP

24

25                                       By:      */s/ Devin A. McRae*
                                                DEVIN A. MCRAE
26
                                         Attorneys For Plaintiffs, Kenny Rosen, Corie
27                                       Henson, and Michael O'Sullivan

28

- 24 -